[L. A. No. 720.  In Bank.—July 19, 1900.]

J. M. METHVIN, Respondent, v. FIDELITY MUTUAL LIFE ASSOCIATION, etc., Appellant.

Life Insurance—Nonpayment of Premium—Forfeiture of Policy.—A policy of life insurance which expressly provides that in case of nonpayment of the stipulated premium at the time fixed therein the policy shall be void, and all payments made thereunder forfeited, ceases to be effective in such case, at the option of the insurance company; and upon the death of the insured with an unpaid installment of premium, which is past due by the terms of the policy, no recovery can be had thereupon.

Id.—Stipulated Pay-days Must Control.—The pay-days stipulated for in the policy must control, no matter when the policy is delivered, and the advance premium paid. The time of payment fixed in the policy is of the essence of the contract, if a forfeiture is provided for upon nonpayment at the day appointed. Delinquency cannot be tolerated or redeemed, except at the option of the company.

Id.—Delivery of Policy After Its Date—Quarterly Premiums from Date—Payment on Delivery—Receipt Under Policy.—The fact that a policy which provided for an advance payment of a premium for the first quarter of a year from its date, and for each quarter of a year thereafter, was not delivered until more than one month after its date, and that the first payment on the policy was then made and receipted for, though effective for the first quarter, cannot have the effect to extend the operation of the first payment for a period of three months from the delivery of the policy, contrary to the terms of the policy, and contrary to a receipt given for the payment in accordance with those terms.

Id.—Nonpayment for Second Quarter—Death of Insured Within Three Months from First Payment.—The death of the insured after the lapse of the pay-day for the second quarter provided for in the policy, without payment therefor, as requested by the company, though occurring within three months after payment made for the first quarter, at the time of delivery of the policy, precludes a recovery thereupon.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial.  Waldo M. York, Judge.

The facts are stated in the opinion of the court.

R. L. Horton, for Appellant.

E. S. Pillsbury, and F. D. Madison, *Amici Curiae,* also for Appellant.

McKinley & Graff, for Respondent.

VAN DYKE, J.—The defendant appeals from the judgment and from the order denying a new trial.

In support of its appeal it is contended on behalf of the appellant: 1. That some of the material findings of fact are unsupported by the evidence; 2. That the court erred in deducing erroneous conclusions from the facts found. The action is based upon a policy of life insurance. The policy recites that the said company, in consideration of the application and the payment of a premium of twenty-four dollars and ninety-six cents "on or before the thirtieth day of July, October, January, and April in every year, for the period of twenty years from the date hereof, does hereby receive Theodule Robert of Los Angeles, county of Los Angeles, state of California, as a member of said association, and issues this policy of insurance, and hereby promises to pay the sum of three thousand dollars to his wife, Ida Robert; . . . . provided, any moneys required to be paid under this policy during the continuance of this contract must be actually paid when due to the said association, and no dues or premiums on this policy shall be considered paid unless a receipt shall be given therefor, signed by the president and treasurer, and countersigned by the agent or person to whom payment is made, as evidence of such payment to him; otherwise this policy shall be *ipso facto* null and void, and all moneys paid hereon, except as hereinafter provided, shall be forfeited to said association."

The said policy is signed at the company's office at Philadelphia, the thirtieth day of July, 1895, and provides: "The same shall not be binding until delivered during the lifetime and good health of the applicant and until the first payment due hereon has been made." The said policy, together with a receipt for the first payment, signed by the president and treasurer of said defendant company at Philadelphia, were forwarded to the local agent at Los Angeles. This receipt, pro-

duced in evidence by the plaintiff, is as follows: "Received from Theodule Robert of Los Angeles, Calif., owner of policy No. 060,809, $24.96, in payment of quarterly dues, payable and due on the 30th day of July, 1895, which pays such dues up to the 30th day of October, 1895." This receipt was counter-signed at Los Angeles on the third day of September, 1895, by Frank Lerch, agent.

The court finds that said policy of insurance was issued on the third day of September, 1895, and the premium paid on said policy was paid for the period of three months from the third day of September, 1895. This finding is not supported by the evidence, but is in direct conflict with it. The policy was executed, as appears on its face, July 30, 1895. Necessarily some little time must elapse between its execution in Phila-delphia and delivery in Los Angeles, which both parties to the contract of course well understood; and without the pro-vision contained in the policy that it would not be binding until delivered, the same result would have followed. "A contract in writing takes effect upon its delivery to the party in whose favor it is made, or to his agent." (Civ. Code, sec. 1626.) If it were not delivered until September 3d, the date when the receipt was countersigned by the local agent, that would not alter the case. The payments are expressly specified in the policy to be due and payable on or before the thirtieth day of July, October, January, and April every year. The first pay-ment under the terms of the policy ran from the 30th of July to the 30th of October, and this payment was received and receipted for by the company, and therefore the company can-not complain that it was not paid before the time at which it was received. As further evidence that there could be no mis-understanding as to when the second payment became due under the terms of the policy, the receipt given to Robert for the first payment expressly declares that the same "pays such dues up to the thirtieth day of October, 1895." In addition to the plain declaration in the policy, and also in the receipt, as to the time when the payments are to be made, the evidence shows that Robert well understood the same. A notice was sent to him by the company through its local agent September 30, 1895, calling his attention to the quarterly premium stipu-

lated in the policy, which would become due October 30, 1895, and also a receipt executed in the usual form sent to the Merchants' National Bank in Los Angeles to be delivered to him on payment of such premium. The second premium not having been paid when due, October 30, 1895, the local agent called upon Robert in reference to the matter. He testified: "I went to see him with Mr. Morgan, a friend of mine, who was well acquainted with him, in order to induce Robert to reinstate the policy. I then asked him whether he was going to pay the premium that had now been past due for a few days. I called his attention to the fact that the receipt was still here and could be paid upon signing a health certificate. He said no, because the policy had been misrepresented to him. I then asked him to read the policy, and asked him what his objections to it were. It seems he thought that at the end of three years he would get the amount of paid-up interest that the policy expressed in cash. I explained to him in the presence of Mr. Morgan, and showed him how it would be utterly impossible for any company to pay that in cash at the end of so short a time; but at the end of twenty years he would have the cash that the premium provided for. He seemed to be satisfied with the policy then, and said he would reinstate it, but did not have the money at that time. He also called my attention to the fact that my agent, St. John, owed him something, some eight or ten dollars—in that neighborhood. I told him that St. John still had a commission interest in the policy, and if he paid the premium, I would hold St. John's money and I would allow him the amount he owed him. . . . . He made no objection that his premium was not due at that time. After that I met him once on Spring street, I think, in front of the Wilson block. That was probably a few days before his death, and I spoke to him again. I said: 'Mr. Robert, you ought to reinstate that policy, because you don't know when you might need it.' He says: 'Why, look at me; I do not look as if I am going to die?' 'No,' I said, 'lots of strong and healthy men die. You had better come down with me. I will take your note and give you a chance to pay it off.' He said: 'You wait until the 1st of December.' Every time I approached him about it he said he would have some money and he

probably would reinstate. He made no objection at that time that his premium was not due." Mr. Morgan, who accompanied said agent, corroborates him in reference to the interview with Robert.

Mrs. Robert, after the death of her husband, supposed that the second premium, due October 30th, had been paid. She employed Blake & Doane as attorneys to correspond with the company in reference to a blank form upon which to make formal proof of death. Their letter was dated April 10, 1896, to which the president of the defendant company replied under date of April 22, 1896, that: "In the regular course of business notice was sent to the insured September 30, 1895, requesting him to make payment of the second quarterly premium to the Merchants' National Bank. The receipt for the same was sent to the Merchants' National Bank for collection, and was returned by said bank, no payment having been made. We understand an attempt was subsequently made by Mr. Lerch to induce Mr. Robert to make payment, execute a health certificate as required by the terms of the policy, etc., but he declined to do it. The policy does not only require and make it a condition precedent to recovery to show that the insured is dead, but also to show justice of claim."

Subsequently, it appears, Mrs. Robert employed other attorneys, to wit, Hanna & Davis, and on September 21, 1897, nearly a year and a half after the first correspondence by Blake & Doane, these new attorneys wrote to the company. In their letter they call attention to the letter written by Blake & Doane, and the answer thereto by the president of the defendant association, and say: "In this last letter you intimated that Mrs. Robert, the beneficiary under said policy, was not entitled to payment of the same by reason of the fact that Mr. Robert declined to make payment of the quarterly premium to the Merchants' National Bank. . . . . This matter has recently been placed in our hands, having been taken out of the hands of Messrs. Blake & Doane, and we write to renew the request that you send us blank proofs, so that we make a proof as to the death of Mr. Robert, and we will say further that as a matter of fact Mr. Robert did pay the second quarterly premium which was due to the company, although not to the

Merchants' National Bank, but was paid to Mr. St. John, the soliciting agent for your company, who was also the agent and had authority to make collections for Mr. Lerch, your general agent here." The president of the company replied to this last letter under date of September 27, 1897, repeating substantially what he had written in the first letter, and that in consequence of the failure of Robert to pay the premium when due, the policy by its terms became null and void.

Up to this time, therefore, it was well understood that the first payment did not extend beyond the 30th of October, 1895, but shortly thereafter the plaintiff became the assignee of Mrs. Robert, and this suit was commenced. On the trial it was conceded that the second payment was not made, but it was contended that the payment of the first premium ran three months from the third day of September, instead of from July 30, 1895, as plainly declared both in the policy and the receipt for the first payment delivered with it.

*McConnell v. Providence Sav. etc. Soc.*, 92 Fed. Rep. 769, decided by the circuit court of appeals of the sixth circuit, is very much like the case at bar. The policy there contained similar terms and conditions with the one here. It was dated April 27, 1893, but was not delivered, nor did it become effective, until May 9, 1893, the first quarterly premium being then paid. The next quarterly premium was payable, according to the policy, July 27, 1893. The insured did not pay the second premium, but died July 28th, one day thereafter. This shows a very extreme case, but the court there, speaking through Judge Taft, the other members of the court concurring, held: "There was a failure to pay a quarterly installment on the day fixed. As a consequence the policy became forfeited, and all liability thereon ceased."

*Bryan v. National Life Assn.* (R. I., 1899), 42 Atl. Rep. 513, was also a case very similar to the one under consideration. There an application had been made on the 18th of the month, and the policy had been issued on the 22d, requiring monthly premiums to be paid on the 15th of each month in advance. The court held that the pay-days specified in the policy must control, saying: "Payment being required in advance, the payment made at its issue would go until the next pay-day should

come. The fact that this would be three days less than a month does not affect the case, since payments, being part of a fixed total, were not payments for a month, but payments due on a particular day of a month." (See, also, *New York Life Ins. Co. v. McMasters*, 30 C. C. A. 532; 87 Fed. Rep. 63.) In this case an application was made to the company under date of December 12, 1893, and the policy was dated December 18, 1893. It was afterward delivered to the insured, and the premium paid on delivery. The policy provided that it should be void if the second premium was not paid within thirty days after December 12, 1894. This premium was not paid, and the insured died six days after his right under the policy had elapsed. The beneficiary filed a bill in equity to have the policy reformed, so that the second premium should be made payable on December 18th, one year from the date of the policy, instead of December 12th. This would have extended the validity of the policy for six days after it became void according to its terms, and would have covered the death of the insured. The court, however, held that the policy could not be reformed, that the rights of the insured had elapsed by failure to pay the premium on the day provided for in the policy, and that plaintiff could not recover upon the policy either at law or in equity.

The court might as well undertake to release the insured from the payment of premiums altogether as to relieve him from forfeiture of his policy in default of punctual payment. The company is as much entitled to the benefit of one stipulation as the other, because both are necessary to enable it to keep its own obligations. As said in *New York Life Ins. Co. v. Statham*, 93 U. S. 24: "All the authorities agree that the time for payment is material—is of the essence of the contract—and nonpayment at the day appointed involves absolute forfeiture when, as in the present case, such are the express terms of the contract." And again it is said: "Promptness of payment is essential in the business of life insurance. All the calculations of the insurance company are based on the hypothesis of prompt payments. They not only calculate on the receipt of premiums when due, but upon compounding interest upon them. It is upon this basis that they are enabled

to offer insurance at the favorable rates they do. Forfeiture for nonpayment is a necessary means of protecting themselves from embarrassment. Delinquency cannot be tolerated or redeemed except at the option of the company." (See, also, Cook on Life Insurance, 174; Bliss on Life Insurance, 273.)

The policy in this case became void prior to the death of Robert for nonpayment of the premium as stipulated. The finding of the court that Theodule Robert and Ida Robert duly performed all the conditions of said policy on their part to be performed and paid all amounts required to be paid thereunder to the defendant is contrary to the evidence; also the finding that the defendant did not deny its liability on said policy prior to the 27th of September, 1897. The evidence shows that it disputed its liability from the first, on the ground that the second payment had not been made as stipulated in the policy.

The judgment and order denying a new trial are reversed.

McFarland, J., Temple, J., Harrison, J., Garoutte, J., and Beatty, C. J., concurred.