JOHNSON v. MUTUAL BENEFIT LIFE INS. CO., INC., OF NEWARK, N. J.

(Circuit Court of Appeals, Eighth Circuit. March 20, 1906.)

No. 2,144.

1. INSURANCE—CONSTRUCTION OF LIFE POLICY—DATE OF EXPIRATION BY LAPSE.
An application for life insurance made in December requested that the annual premiums should become due November 11th each year and gave the applicant's age as 44. His forty-fourth birthday was the nearest on November 11th, but his forty-fifth was nearest counting from the date of the application or of the policy, which was issued on January 15th following. The first year's premium was then paid in full but the next was made payable on the following November 11th, and was then paid and the succeeding ones on the same date each year. On each payment a receipt was given and accepted providing that the policy was thereby continued in force for one year from that date. The annual premiums on such a policy were each about $8 less when a person was insured at the age of 44 than when at the age of 45, and this policy was written at the lower rate. By its terms it was to lapse at once on the failure to pay any premium when due, but it contained a non-forfeiture clause by which in the event of a lapse the net reserve to

its credit was to be applied to the purchase of paid up insurance in the same amount for such term as the sum would pay for. After paying three premiums the insured made default, and subsequently died. Whether or not the extended term insurance, applying to its purchase the sum credited to the policy by the company, was in force at the time of his death depended on whether the policy lapsed and the term commenced on November 11th, when the default occurred or on January 15th, three years after its date. *Held,* that it was the evident intention of the parties that the yearly terms of the policy should commence and end on November 11th each year, and that the lapse took effect on that date when the default occurred, the consideration to the insured for the shortening of the first year being the lower premium rate he secured by being accepted as of the age of 44.

2. SAME—RIGHT TO CREDIT BY DIVIDENDS—EFFECT OF LAPSE.

In January preceding the lapse of the policy the directors of the insurance company adopted a resolution appropriating a gross sum of money to the payment of dividends on all participating policies which should be "continued in force on their anniversaries" in that calendar year, and a certain part of such sum was apportioned to the policy of the insured. *Held,* that the anniversary of the policy was on the ensuing November 11th, and because of its lapse on that date it was not entitled under such resolution to participate in the dividend.

3. SAME—SETTLEMENT OF INTEREST CHARGE AGAINST POLICY HOLDER—IMPEACHMENT.

A settlement of an interest charge on a preceding premium loan made between an insured and the company at the time a premium was paid cannot be impeached or opened after the death of the insured, in the absence of any showing of fraud or mistake.

In Error to the Circuit Court of the United States for the District of Nebraska.

This was an action by the administratrix of the estate of Frank C. Johnson, deceased, to recover upon a contract of extended insurance arising under the nonforfeiture provisions of a policy upon the life of the deceased after his default in the payment of the premium. The insured was born May 12, 1846, and when his application for the policy was made, December 24, 1890, and when his policy was issued and dated, January 15, 1891, he would have been 45 years of age at his nearest birthday. His application, which was made a part of the policy, contained the direction "Premiums payable November 11th, age 44." On November 11, 1890, his nearest birthday was his forty-fourth. The premium rate of the company at the age of 44 was $179.70, and at the age of 45 was $187.10. The policy, which was for $5,000, recited that the age of the insured was 44, that the annual premium rate was $179.70, that the first premium had been paid, and that the succeeding premiums should be paid on or before the 11th day of November in every year during the continuance of the policy. The course of premium settlement adopted by the parties was the payment by the insured of 70 per cent. of the annual premium in cash and the making of a loan for the remainder bearing interest at 6 per cent. Shortly before the 11th of each succeeding November until the insured made default, the company sent him a statement in which he was charged with the entire amount of the annual premium then about to mature, with the amount of the then outstanding premium loan and the interest thereon to the approaching 11th of November. In this statement he was tentatively credited with the payment of 70 per cent. of the annual premium, also with the dividend declared for the current year and with the balance which was carried as the new premium loan. An accompanying notice required him to pay in cash the 70 per cent. of the premium about to mature and advised him that upon such payment a renewal receipt would be forwarded. When the settlement and payment was made upon this basis a renewal receipt was sent him continuing his policy in force for one year.

It was provided in the policy that upon default in the payment of any premium when due the policy should cease and determine, subject, however, to certain specified nonforfeiture provisions. These provisions, which did not become effective unless payment of two full annual premiums had been made, presented two alternatives to the insured. One of these need not be further noticed as its selection required the affirmative action of the insured and that action was not taken. The other provided that upon lapse of the policy for nonpayment of any premium after two had been paid the entire net reserve of the policy less indebtedness of the insured thereon should be applied to the purchase of paid up nonparticipating term insurance. The insured paid or settled for three annual premiums including the one at the issue of the policy, but he defaulted in the payment of the one which matured November 11, 1893; the policy therefore lapsed and the nonforfeiture provisions above referred to operated to secure to the insured an extension of the insurance in the full amount of the policy but for a limited term. The insured died September 28, 1896. The plaintiff as administratrix of his estate and as such being the beneficiary in the policy, presented proofs of death and upon nonpayment by the company brought action upon the theory that the term of the extended insurance had not expired when the insured died. The company in defending claimed that the extended term had expired before the death of the insured. A jury was waived and the Circuit Court found for the company upon the pleadings and the evidence and entered judgment accordingly. This writ of error was then obtained.

John P. Breen, for plaintiff in error.
Warren Switzler, for defendant in error.

Before VAN DEVANTER and HOOK, Circuit Judges, and LOCHREN, District Judge.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The question in this case is whether the extended insurance was in force at the death of the insured, and this in turn depends upon the ascertainment of the date from which the period thereof should be calculated, whether November 11, 1893, or January 15, 1894, and also upon the amount of the credit of the insured applicable to the purchase of such insurance under the nonforfeiture provisions of his policy. The administratrix contends that although the insured made default in the payment of the premium due November 11, 1893, nevertheless the last premium paid by him continued the life of the policy until January 15, 1894, the anniversary of its date, and therefore the period of extended insurance commenced on that day and did not expire until after the death of the insured.

The policy of insurance was issued and dated January 15, 1891, and one annual premium was then paid. The due date for the payment of subsequent premiums was fixed in the policy for the 11th day of November in each year, thus making the due date for the second premium November 11, 1891. When the application for the policy was made on December 24, 1890, and when the policy was issued, the nearest birthday of the insured was his forty-fifth. On the 11th of November, 1890, the forty-fourth birthday of the insured was the nearest by one day. The annual premium rate of the company at the age of 44 was $179.70, while the rate at the age of 45 was $187.10. In his application the insured requested that the policy be issued to him as of the age of 44 and that the premiums be made payable

November 11th. This direction was observed in the policy; the age of the insured was recited as being 44, the premium as being $179.70, and the due date thereof as being the 11th of November in each year during the continuance of the policy. That both the insured and the company regarded the first premium payment as carrying the policy only to the 11th of November, 1891, and not to the 15th of the following January, is conclusively shown by their subsequent course of dealing. Shortly prior to the 11th of November, 1891, the company sent to the insured a notice of the approaching maturity of the second premium containing a requirement that 70 per cent. be paid in cash and a statement indicating the balance to be carried as new premium loan after crediting the payment and a dividend declared by the company. The premium was settled in this way, and the insured received and retained a receipt dated November 11, 1891, setting forth the transaction in detail and providing that his policy was thereby "continued in force for one year from date, settlement of the premium having been made as per margin." The same course was pursued in the settlement of the premium due November 11, 1892, and the receipt of that date contained a similar provision continuing the policy in force for one year thereafter. Default was made in the payment of the premium due November 11, 1893. In view of all of these things we are unable to sustain the contention of the administratrix that the premium payments continued the policy in full force until the 15th of January, 1894. Such a construction is irreconcilable with that which the unambiguous conduct of the parties shows that they adopted for their own guidance. It is not of vital importance to determine their motives in the adjustment of the premium payments, but it is fairly inferable, unless we shut our eyes and ignore well-known methods employed in the insurance business, that the rule of the company was to regard the age of the applicant for insurance as being that at his nearest birthday, and that as the insured desired to obtain a lower premium rate, which was to endure during the life of the policy, he was willing to allow his first premium payment to cover a short period anterior to the date of his policy so that he might be accepted as of the age of 44.

The case of McMaster v. Insurance Co., 183 U. S. 25, 22 Sup. Ct. 10, 46 L. Ed. 64, upon which counsel rely, is not in point. There the request that the policies when issued be antedated was inserted in the application by the agent of the company for his own private purpose without the knowledge or consent of the insured, and after his signature had been obtained to the application. The policies subsequently issued provided that the due date of future premiums should correspond with the earlier date of the application, but this was neither desired nor authorized by the insured nor was he cognizant of it. On the contrary, when the policies were delivered to the insured untrue representations were made to him as to their purport in this particular. Methvin v. Life Ass'n, 58 Pac. 387, also relied upon, was decided by a department of the Supreme Court of California, but upon rehearing by the court in banc a contrary conclusion was reached and views were announced adverse to those pressed upon us by counsel. Methvin v. Life Ass'n, 129 Cal. 251, 61 Pac. 1112.

The administratrix also contends that if the insured·had been properly credited with a certain dividend declared by the company the net reserve of his policy after deducting his indebtedness would have been sufficient to purchase term insurance extending beyond the time of his death.  Thirty per cent. of each annual premium was carried by the company as premium loan to the insured at 6 per cent. interest. On the premium· days there were credited against these loans the dividends declared by the company and apportioned to the policy of the insured; and the balance remaining on November 11, 1893, was indebtedness of the insured to be deducted from the net reserve of his policy to ascertain the amount applicable as a single premium to the purchase of term insurance.  On January 30, 1893, the directors of the company adopted a resolution apportioning a gross sum of money "to the payment of dividends for the years 1892-1893 on all participating policies which shall be continued in force upon their anniversaries in 1893 according to the rules of the company and the computation of the mathematical. department made in pursuance of instructions of. the board."  Of this gross dividend $40.60 was apportioned to the policy of the insured.  The contention is that this amount should have been credited on January 30, 1893.  The company claims (1) that under the terms of the resolution the insured was not entitled to tnis credit at all because his policy was not continued in force upon its true anniversary in 1893; or (2) that if the right to credit existed it should not be given until the premium settlement day in November.  The dividend contemplated by the resolution was applicable only to participating policies and to those which should be continued in force upon their anniversaries in 1893.  The true anniversary of the policy in question was November 11, 1893. At that time it ceased and determined as a participating policy because of default in the premium, and the limited term insurance which then automatically arose was of a nonparticipating character.  But even if the insured was entitled to the dividend, it is clear that it was proper to give the credit in November, not in January.  This course was pursued at the premium settlements of November 11, 1891, and November 11, 1892, when he was credited with the dividends of 1891 and 1892, respectively, and nothing to the contrary appearing, it must be presumed that it was in accord with the rules of the company, the instructions of the board of directors, and the views of the insured himself.

The remaining contention which need be noticed is that there was an interest overcharge of 58 cents at the premium settlement of November 11, 1891, a full year's interest having been charged on the preceding premium loan· instead of for a period from January 15th to the 11th of November; also that had this overcharge not been made the balance of net reserve at the lapse in 1893 would have purchased term insurance extending beyond the hour of the death of the insured though expiring on the same day.  It is sufficient·to say that this settlement was made by the parties themselves, and remained unchallenged and unquestioned for years.  In the absence of fraud or mistake, it will not now be opened up for the purpose of adding to

the term of insurance. For aught that appears the charge was part of the price paid by the insured for the lesser premium rate.

The judgment of the Circuit Court is affirmed.