## TRAVELERS' PROTECTIVE ASS'N OF AMERICA v. ZIEGLER.
### (No. 6918.)

(Court of Civil Appeals of Texas. San Antonio. March 28, 1923. Rehearing Denied May 2, 1923.)

**I. Insurance ☞756(1)—"Delinquency" in payment of semiannual dues in advance held to automatically avoid benefit certificate.**

Where a fraternal insurance contract provided that dues should be paid semiannually in advance on or before December 31st and June 30th, without notice, and that failure to pay should forfeit the membership, subject to reinstatement, and it appeared that insured failed to pay his dues for the last six months of 1921, on or before June 30, 1921, and was killed on July 2d, he had automatically become delinquent, and his beneficiary was not entitled to benefits under the certificate; delinquency being a failure, omission or violation of duty.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Delinquency.]

**2. Insurance ☞764—Payment in advance of semiannual dues upon reinstatement held not to extend insurance six months from date of payment.**

Where a fraternal insurance contract provided for payment of dues semiannually in advance on or before December 31st and June 30th, without notice, and a member who had become delinquent and was later reinstated paid his dues on the 15th of January, the term for which payment was made expired on June 30th, and not at the end of six months from the time of reinstatement.

**3. Insurance ☞818(1)—Membership card on reinstatement in fraternal benefit association held admissible as showing subsequent agreement as to effect of payment of dues.**

Where a fraternal benefit certificate provided for payment of semiannual dues in advance on December 31st and June 30th, and insured, after becoming delinquent, paid up and was reinstated on January 15th, a card given him on reinstatement showing that it expired on June 30th and accepted without protest of insured was admissible as evidencing a subsequent agreement of the parties in a suit on the certificate for the death of insured subsequent to the expiration of the period for which payment was made, but before expiration of six months from the time of reinstatement.

**4. Insurance ☞764—Construction of parties governs as to time for which advance dues are paid.**

Where a fraternal benefit association, a member thereof, and the beneficiary under the certificate construed the contract to mean that upon a reinstatement after delinquency a pay-

ment of dues carried the time of paid-up insurance to a certain date, such construction will govern in an action on the certificate to recover for the death of insured occurring after the expiration of such time.

**5. Statutes ⟨Key⟩107(1) — Fraternal insurance law held not to violate constitutional provision against bills containing more than one subject.**

Acts 1913, c. 113 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4827 et seq.), providing for fraternal insurance, *held* not to violate Const. art. 3, § 35, providing that no bill except general appropriation bills shall contain more than one subject, which shall be expressed in its title.

**6. Statutes ⟨Key⟩107(1)—Constitutional provision against more than one subject only requires that same subject must be in view in every part of act.**

Const. art. 3, § 35, requiring that bills shall not contain more than one subject, is less drastic than previous Constitutions which used the word "object," and it only requires that the same subject must be in view in every part, and so long as that is done the Constitution is not violated.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by Agnes Ziegler against the Travelers' Protective Association of America. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Thos. G. Rutledge, of St. Louis, Mo., and Davis & Long and Perry S. Robertson, all of San Antonio, for appellant.

H. C. Carter, Champe G. Carter, McCollum Burnett, Randolph L. Carter, and Perry J. Lewis, all of San Antonio, for appellee.

FLY, C. J. This is a suit on an insurance policy on the life of Benjamin Harrison Ziegler, deceased, husband of Agnes Ziegler, the beneficiary, issued by appellant, a fraternal society with a foreign charter, but operating under a legal permit to do business in Texas, the policy being for $5,000. Appellant claimed a forfeiture by reason of a failure to pay dues as provided by the constitution and by-laws of the association. The cause was tried by jury, and the court directed a verdict for the amount of the policy, which was complied with, and judgment accordingly so rendered.

The uncontroverted evidence showed that deceased was insured for $5,000 in the appellant association, which was a fraternal benefit society under the provisions of chapter 7, tit. 71, Vernon's Sayles' Civ. Stats., and made his last payment on January 15, 1921, for the dues for the 6 months ending on June 30, 1921. He was killed on July 2, 1921, in an automobile collision, and due notice of his death and claim were made to appellant. The dues payable on or before midnight of June 30 in the sum of $5.50 had not been paid at the time of his death. It was a provision of the certificate that the constitution, by-laws, and articles of said association and the application for membership should become a part of the contract of insurance, and the constitution and by-laws provide that the annual dues of each member shall be $11, and should be paid annually in advance or in semiannual installments of $5.50 each in advance, on or before December 31 and June 30, without notice. It is also provided:

"Any member may pay said dues before they become due, as aforesaid, but any member failing to pay said dues in advance on the day on which they become due, as aforesaid, to the secretary of the state division of which he is a member shall by such failure cease to be a member of this association, and he and his beneficiary shall cease to be entitled to any benefits under his benefit certificate. Should he within thirty days after such default pay such dues, he may be reinstated and receive a new card of membership, but he shall receive no insurance benefits of any kind under his benefit certificate between the date of said default and the date of his reinstatement; and, if injured during the thirty or less days of his delinquency, the delinquent shall receive no indemnity therefor, nor shall the beneficiary of such delinquent be entitled to any benefits should such delinquent be fatally injured during such period of delinquency."

[1] Under the testimony Benjamin Harrison Ziegler failed to pay his dues for the last 6 months of 1921 on or before June 30, 1921, and under the clear and unequivocal terms of the constitution and by-laws of the association he automatically became a delinquent and was delinquent on July 2, 1921, when he lost his life, and his beneficiary was not entitled to any benefits under the certificate held by him. The constitution and by-laws were a part of the contract and were read into it by the terms of agreement, and no notice was required, but was specially dispensed with, and at the very time the deceased passed the last moment of June 30 without payment of his dues he became a delinquent and stood in the same position that he would have occupied had he never paid the dues except in so far as he could by a payment within 30 days reinstate himself. During his delinquency for the 30 days or any part thereof he was delinquent without any claim on the association for benefits for injuries, and in case of death his beneficiary could receive no benefits.

[2] It is the contention of appellee that, as deceased was reinstated on January 15, 1921, and on that date paid the semi annual dues of $5.50, he had fully paid up to July 15, and consequently was not in arrears for dues when he was killed on July 2. Under that contention deceased suffered no penalty whatever for becoming delinquent, but could

by becoming delinquent at the end of each successive 6 months gain nearly a month free from dues and then return to the fold. If appellee's theory is correct, deceased could have waited until July 15, then remained delinquent until August 14, then on February 14 become delinquent until March 14, and so on running the gamut of the 12 months. No such construction is warranted by the terms of the contract, but it is clear that the delinquency was for the 6 months running from January 1 to June 30, inclusive, and not for 6 months from payment. The contract says the dues must be paid on or before June 30 and December 31 of each year, and provides that, if a member shall become delinquent for "said dues"—that is, dues beginning at midnight on June 30 or December 31—he shall cease to be entitled to any benefits under his certificate. And then, if in 30 days after default he shall pay such dues, he may be reinstated. The delinquent owes for the 6 months beginning at the end of June 30 or December 31, and not for any other 6 months chosen by himself. That it was contemplated that the semiannual dues should begin at the times named in the contract, and no other, is shown by the fact that deceased was given a certificate of membership on November 5, 1919, and his first payment was not for 6 months from that time, but he paid $2 as a membership fee and $1.84 dues to December 31, 1919. If the parties had construed the contract as appellee does, $5.50 would have been demanded and paid, and, instead of the times of payment of dues for deceased being as was provided by the contract, they would have been changed to May and November, and it would have been "so nominated in the bond." To follow the suggestion of appellee would place a premium on delinquency at the expense of the faithful members who pay their dues according to the terms of their contract. Delinquency means a failure, omission, or violation of duty, and deserves punishment rather than reward.

In the recent case of Rolerson v. Standard Life Ins. Co. (Tex. Civ. App.) 244 S. W. 845, a similar provision as to payment of premiums was found in the contract of insurance, and the Court of Civil Appeals at Texarkana placed the same construction that this court does upon the requirement as to payments. In that case the policy was issued on October 3, 1919, but was not delivered to the insured until November 6, 1919, and on that date she paid the first premium. She died on November 27, 1920. It was provided in the policy that the premiums must be paid on October 3, of each year, or, if made in two payments, one to be paid on October 3, and the other on April 3, or, if made in four payments, on October 3, January 3, April 3, and July 3. Thirty days' grace was allowed for payment of the premiums, and it was the contention of the beneficiary that the 30 days ran from November 6, when the premium was paid, until December 6. The court held:

"Evidently the clause in the policy fixing the '3d day of October in each and every year' as the time of paying the second and recurring premiums was intended to make definite and particular the time in each year when the 'annual' payments were to be made. If no date had been expressly specified in the policy for the payment of the second and recurring premiums, then the premium period would probably be computed from the date of the actual delivery, instead of the date of the policy, upon the ground that the policy is conditioned to take effect on the payment of the first premium, and the second and recurring premiums are to be paid 'annually.'"

The court held that the 30 days of grace began on October 3 and ended on November 3, and that the time for payment was gone on November 27, when the insured died. Two decisions, Methvin v. Life Association, 129 Cal. 251, 61 Pac. 1112, and Mutual Life Ins. Co. v. Stegall, 1 Ga. App. 611, 58 S. E. 79, are cited in support of the decision and they fully sustain it. The Rolerson Case is directly in point and is deemed excellent authority by this court, although it is stated in the brief of appellee that:

"As the amount involved in the Rolerson Case was only $500, the Supreme Court is without jurisdiction, and thus the decision is not conclusive or controlling in this state."

We think it is the law and just as conclusive as though it had been approved by the Supreme Court, because it is a true expression of the law of contract which cannot be affected by any expression of disapproval of any other court.

[3] On January 15, 1921, upon receipt of a check for the 6 months' dues, a new card was sent deceased which in terms stated that the payment of the 6 months' dues entitled the insured "to all benefits and privileges of the association until June 30, 1921, and said certificate shall be in force from the date of the payment of the dues until that date." That the card expired on June 30, 1921, was reiterated in another part of the card. That card was accepted without protest or dissent of the insured, and no effort was made in any way to have it corrected. It was admissible as evidencing a subsequent agreement between the parties. Ins. Co. v. Tabor, 111 Tex. 155, 230 S. W. 397; Ins. Co. v. Rosenberry (Tex. Com. App.) 213 S. W. 242; Southland Ins. Co. v. Hopkins (Tex. Com. App.) 244 S. W. 989.

There was a failure to pay the dues as required by the plain terms of the constitution and by-laws, the certificate and the subsequent agreement by which deceased was reinstated and however disinclined we may feel to enforce a forfeiture the contract must be respected and enforced whether such enforcement inures to the benefit of the insured or

the insurer. As said by the Supreme Court of Texas in Equitable Life Ins. Co. v. Ellis, 105 Tex. 526, 147 S. W. 1152, 152 S. W. 625:

"The law plainly is that, when a policy of insurance provides the premium shall be paid on or before a stipulated day or the policy shall become forfeited and void, time becomes the very essence of the contract, and a failure to so pay the premium determines it; but concurrent with this principle is always the qualification that this is so, unless there be a waiver or estoppel. We fully subscribe to the doctrine that in such cases the forfeiture occurs ipso facto, and no act of the company need be done either to declare it or enforce it."

In that case, as in this, the reinstatement was dependent on the will of the insurer, and, as said by Judge Phillips:

"As such reinstatement was purely optional with the company, at the time these letters were written, Ellis stood divested of any right under the contract that he could have enforced, and the continuance of his insurance was dependent entirely upon the will or disposition of the company."

This court discussing the same question in Knodel v. Ins. Co. (Tex. Civ. App.) 193 S. W. 1138, held:

"By the terms of the policy the failure to pay the second premium on July 14, 1914, ended the policy. No act of the company was required to declare or enforce the forfeiture. The failure to pay the premium when due alone forfeited the policy."

[4] The parties recognized that the payment made on January 15, 1921, was only for dues to June 30, 1921, and acted thereon, for deceased received and retained without objection the new card stating that the dues were only to the date named and before or after his death when appellee made an effort to remedy his failure to pay the dues the check was dated June 30, although it was not mailed until July 4. The insured, the insurer, and the beneficiary so construed the contract, and so intended to be bound. That intention and construction of the contract must be made effective. Mortgage Co. v. Massie, 94 Tex. 339, 60 S. W. 544.

[5] Section 35, art. 3, Constitution of Texas, provides that no bill except general appropriation bills shall contain more than one subject, but it has been held by the Supreme Court of Texas that in the application of that provision the most liberal construction must be given to make the whole of a law constitutional, and the Constitution is complied with if the title fairly gives reasonable notice of what is enacted. Giddings v. San Antonio, 47 Tex. 548, 26 Am. Rep. 321; Stone v. Brown, 54 Tex. 330; De Silvia v. State, 88 Tex. Cr. R. 634, 229 S. W. 542.

[6] There is but one subject embraced in the law providing for fraternal insurance, and that was clearly set out in unnecessary detail in the caption. Gen. Laws 1913, p. 220 (Vernon's Sayles' Ann. Civ. St. 1914, art. 4827 et seq.). Section 4 of the act (article 4830) exempts the fraternal insurance companies from laws in regard to insurance companies, and it does not introduce a different subject, but it is subsidiary to the main subject of the statute. The word "subject" is used in the Constitution of 1876, instead of the word "object" used in previous Constitutions, making the present provision less drastic. It requires that the same subject must be in view in every part of the act, and so long as that is done the Constitution is not violated. As said by Judge Cooley, the generality of a title is no objection to it. All that is necessary is that it is not made a cover for obnoxious legislation, and that a proper connection is shown among the different parts of the act.

As said by Judge Cooley, Constitutional Limitations, p. 2058, the general design of the constitutional provision is accomplished when a law has but one general subject, which is fairly indicated by its title. The act in question has but one subject in view, the establishment of fraternal benefit societies, and to provide for their regulation, and every part is enacted to that end. The article 4830 is not obnoxious to the constitutional rule in question.

The judgment is reversed, and judgment here rendered that appellee take nothing by her suit and pay all costs in this behalf expended.