# McMASTER v. NEW YORK LIFE INSURANCE COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 29. Argued March 18, 1901.—Decided October 28, 1901.

The policies sued on provided for forfeiture on nonpayment of premiums, and as to payments subsequent to the first, which were payable in advance, for a grace of one month, the unpaid premiums to bear interest and to be deducted from the amount of the insurance if death ensued during the month. The applications, which were part of the policies, were dated December 12, 1893, and by them McMaster applied, in the customary way, for insurance on the ordinary life table, the premiums to be paid annually; the company assented and fixed the annual premium at $21, on payment of which, and not before, the policies were to go into effect. After the applications were filled out and signed, and without McMaster's knowledge or assent, the company's agent inserted therein: "Please date policy same as application;" the policies were issued and dated December 18, 1893, and recited that their pecuniary consideration was the payment in advance of the first annual premiums, "and of the payment of a like sum on the twelfth day of December in every year thereafter during the continuance of this policy." They were tendered to McMaster by the company's agent, December 26, 1893; but McMaster's attention was not called to the terms of this provision, and on the contrary he "asked the agent if the policies were as represented, and if they would insure him for the period of thirteen months, to which the agent replied that they did so insure him and thereupon McMaster paid the agent the full first annual premium or the sum of twenty-one

dollars on each policy and without reading the policies he received them and placed them away." McMaster died January 18, 1895, not having paid any further premiums, and the company defended on the ground that the policies became forfeited January 12, 1895, being twelve months from December 12, 1893, with the month of grace added. *Held* that, ·

(1) The statutes of Iowa where the insurance was solicited, the applications signed, the premiums paid and the policies delivered, govern the relation of the solicitor to the parties.

(2) Under the circumstances plaintiff was not estopped to deny that McMaster requested that the policies should be in force December 12, 1893, or, by accepting the policies, agreed that the insurance might be forfeited within thirteen months from December 12, 1893.

(3) The rule in respect of forfeiture that if policies of insurance are so framed as to be fairly open to construction that view should be adopted, if possible, which will sustain rather than forfeit the contract is applicable.

(4) Tested by that rule these policies were not in force earlier than December 18, 1893, and as the annual premiums had been paid up to December 18, 1894, forfeiture could not be insisted on for any part of that year or of the month of grace also secured by the contracts.

This was an action brought by Fred A. McMaster, administrator of the estate of Frank E. McMaster, deceased, against the New York Life Insurance Company on five policies of insurance of one thousand dollars each upon the life of Frank E. McMaster.

The applications were dated December 12, and the policies December 18, 1893. The premiums for a year in advance were paid, and the policies delivered December 26, 1893.

McMaster died January 18, 1895, and the defence was that the insurance had been forfeited by failure in payment of the second annual premiums on or before January 12, 1895, that is to say, within thirty days after December 12, 1894, when the company contended they became due.

The company alleged in a substituted and amended answer that the policies were executed and delivered December 12, 1893, and set forth:

" 2. This defendant, for further answer, says that said application is dated the 12th day of December, 1893, and asked the issuing of five policies of $1000 each upon the life of the said

Frank E. McMaster, deceased. Said application also contained a request that said five policies each should be issued, dated and take effect the same date as the application, namely, the 12th day of December, 1893, and said request was complied with, and the policies were so issued.

" This defendant grants to the insured in said defendant company a grace of one month on the payment of premiums, which extended the day of payment of premiums from December 12th, 1894, as in the policies issued to said Frank E. McMaster, deceased, late as the 12th day of January, 1895, but not later.

" 3. This defendant, for further answer, says that payment of the premiums due upon said policies were not paid within the time prescribed as aforesaid, and that said Frank E. McMaster died on the 18th day of January, 1895, six days after said policies had lapsed and were forfeited for non-payment of premiums as required.

\*     \*     \*     \*     \*     \*     \*     \*

" 6. This defendant, further answering said petition, says that said application is a part of said policies, in each case, that said assured received and accepted said policies during his lifetime and had them all in his possession for a long time, and was aware and knew, or could have known, the contents in each policy.

" That said assured had paid the premiums when said policies were delivered to him ; that by reason of said assured's acceptance of said policies, his representative, the plaintiff herein, is estopped from denying the date of said policies or claiming that said policies should have a different date from the application, and is estopped for the reasons above stated from claiming that said words, to wit: ' Please date policy same as application ' were not in said application when insured signed same, for by accepting said policies the assured waived said right to object, if said words were inserted, as alleged in petition after the signing of the application, which this defendant denies."

The case was tried by the Circuit Court without a jury ; special findings of fact made ; and judgment rendered in favor of defendant. 90 Fed. Rep. 40.

Plaintiff prosecuted a writ of error from the Circuit Court of

Appeals and the judgment was affirmed. 99 Fed. Rep. 856. The writ of certiorari was then allowed.

Pending the trial below, plaintiff filed a bill in equity for the reformation of the policies, and the Circuit Court granted the relief prayed. 78 Fed. Rep. 33. On appeal this decree was reversed, 57 U. S. App. 638; and an application to this court for certiorari was denied. 171 U. S. 687. The Circuit Court of Appeals expressed the opinion in that case that no recovery could be had at law or in equity, and accordingly the Circuit Court in this case, although of opinion that plaintiff was entitled to recover, gave judgment for defendant.

Separate opinions were given by the judges of the Court of Appeals, Sanborn and Thayer, JJ., concurring in affirming, and Caldwell, J., dissenting.

The findings of fact by the Circuit Court were as follows:

"1st. The plaintiff, Fred A. McMaster, was when the suit was brought and is now, the lawfully appointed administrator of the estate of Frank E. McMaster, deceased, having been appointed administrator of the named estate by the probate court of Woodbury County, Iowa, and furthermore said plaintiff was, when this suit was brought and is now a citizen of the State of Iowa, and a resident of Woodbury County, Iowa.

"2d. That the defendant, the New York Life Insurance Company, was when this suit was brought and is now, a corporation created under the laws of the State of New York having its principal office and place of business in the city of New York in the State of New York, but being also engaged in carrying on its business of life insurance in the State of Iowa, and other States.

"3d. That in December, 1893, F. W. Smith, an agent for the New York Life Insurance Company, residing at Sioux City, Iowa, solicited Frank E. McMaster, to insure his life in that company, and as an inducement to taking the insurance pressed upon McMaster the provision adopted by the company and set forth in the circular issued by the company, and printed on the back of the policies issued by the company under the heading, 'Benefits and Provisions referred to in this Policy' in the following words: 'After this policy shall have been in force three

months, a grace of one month will be allowed in payment of subsequent premiums, subject to an interest charge of 5 per cent per annum for the number of days during which the premium remains due and unpaid. During said month of grace the unpaid premium, with interest as above, remains an indebtedness due the company, and in the event of death during said month, this indebtedness will be deducted from the amount of the insurance.'

"4th. Relying on the benefits of this provision and in the belief that if he accepted a policy of insurance upon his life, from the New York Life Insurance Company, paying the premiums thereon annually, the company could not assert the right of forfeiture until thirteen months had elapsed since the last payment of the annual premium, the said Frank E. McMaster signed an application for insurance in said company, dated December 12, 1893, of the form which is made part of the policies sued on and attached to the petition, the same being made part of this finding of facts.

"5th. In the application when signed by Frank E. McMaster, it was provided that the amount of insurance applied for was the sum of $5000 to be evidenced by five policies for $1000 each, on the ordinary life table, the premium to be payable annually.

"6th. There now appears on the face of the application, interlined in ink, the words, 'please date policy same as application.' These words were not in the application when it was signed by McMaster, but after the signing thereof, they were written into the application by F. W. Smith, the agent of the New York Life Insurance Company, without the knowledge or assent of Frank E. McMaster, and were so written in by the agent in order to secure to the agent a bonus which the company allowed to agents for business secured during the month of December, 1893, and it does not appear that Frank E. McMaster ever knew that these words had been written into the application and it affirmatively appears that he had no knowledge thereof when the application was forwarded to the home office of the company and was acted on by the company.

"7th. By the express understanding had between F. W. Smith,

the agent of the New York Life Insurance Company and Frank E. McMaster when the application for insurance was signed, it was agreed that the first year's premium was to be paid by McMaster upon the delivery to him of the policies and that the contract of insurance was not to take effect until the policies were delivered.

"8th. The defendant company, at its home office in New York City, upon receipt of the application determined to grant the insurance applied for and issued five policies each for the sum of $1000 dated December 18th, 1893, and reciting on the face thereof that the annual premium on each policy was $21.00 and forwarded the same to its agent, F. W. Smith, at Sioux City, Iowa, for delivery to Frank E. McMaster. These five policies are in the form of the one attached to the petition in this case, which is hereby made a part of this finding of fact, and each policy contains the recital: 'This contract is made in consideration of the written application for this policy, and of the agreements, statements, and warranties thereof, which are hereby made a part of this contract, and in further consideration of the sum of twenty-one dollars and———cents, to be paid in advance, and of the payment of a like sum on the twelfth day of December in every year thereafter during the continuance of this policy.'

"9th. The five policies enclosed in envelopes on or about December 26th, 1893, were taken by F. W. Smith, the agent of the defendant company, to the office of Frank E. McMaster, who asked the agent if the policies were as represented, and if they would insure him for the period of thirteen months, to which the agent replied that they did so insure him and thereupon McMaster paid the agent the full first annual premium or the sum of twenty-one dollars on each policy and without reading the policies he received them and placed them away. The agent did not in any way attempt to prevent McMaster from reading the policies and he had the full opportunity for reading them, but in fact did not read them and accepted them on the statement of the agent of the company as hereinabove set forth.

"10th. That not later than November 17th, 1894, notice was sent to Frank E. McMaster, of the coming due of the premiums

on the policies issued to him by the defendant company, in accordance with the requirements of the statutes of the State of New York.

"11th. The renewal receipts for the second annual premium on the five policies held by Frank E. McMaster, in the defendant company, were sent for collection to Mary A. Ball, at Sioux City, Iowa, who on the 11th or 12th day of December, 1894, called on said McMaster for payment of the premiums in question. At that time McMaster declined making payment thereon, saying that he had seen other policies which promised better results and that he did not think he would renew the insurance in the defendant company. Miss Ball told him the New York contracts had some nice provisions like thirty days of grace and loans, and in reply to an inquiry from McMaster, stated that his policies entitled him to the month's grace in the payment of the premiums, and that, as she understood it, the grace on the second premiums would expire January 11th, and McMaster said if he concluded to keep any of the insurance he would call and pay for it, before the grace expired.

"12th. That in November or December, 1894, Frank E. McMaster was examined for the purpose of obtaining life insurance by the agents of the Union Central Insurance Company, it being understood between the parties that the policies were not to issue until in January, 1895, and it being the purpose of McMaster to take one or two thousand dollars insurance in the Union Central Company, at the expiration of his insurance in the defendant company, but also to continue part of the policies held in the defendant company.

"13th. That on or about January 15th, 1895, the agent of the Union Central Company, meeting McMaster on the street in Sioux City, told him the policies issued by the Union Central Company had been received, and in reply McMaster said: 'All right, just hold them, there is no hurry about them,' and in the same conversation he stated that he had other insurance, referring to the policies in the defendant company.

"14th. That the action of Frank E. McMaster shows, and the court so finds the fact to be, that the said McMaster believed that the policies issued to him by the defendant company would

continue in force for the period of thirteen months from the date of the policies and his action with respect to the policies in the defendant company and the proposed insurance in the Union Central Company was based upon and governed by this belief on his part.

"15th. That Frank E. McMaster died at Sioux City on the morning of January 18th, 1895.

"16th. That up to the time of his death, the said Frank E. McMaster had not paid the second year's premiums on the policies issued to him by the defendant company, nor have the same been paid since his death, nor had the said McMaster received or paid for the policies issued by the Union Central Company, and the same had not been delivered or become effectual.

"17th. That due and sufficient notices and proofs of the death of said Frank E. McMaster were immediately sent to and received by the defendant company, and due demand for the payment of the five policies sued on was made by the plaintiff, as administrator of the estate of Frank E. McMaster, and refused by the defendant company on the ground that the policies in question had lapsed and were not in force at the time of the death of said Frank E. McMaster, by reason of the failure to pay the second year's premiums coming due on said policies.

"18th. That the defendant company has not paid said policies or any part thereof, and assuming the same to be valid, there is due thereon November 1, 1898, the sum of ($5965) five thousand nine hundred and sixty-five dollars, after deducting from the face of the policies the amount of the second premiums with interest thereon to March 14, 1895."

The policies were dated December 18, 1893, and provided:

"This contract is made in consideration of the written application for this policy, and of the agreements, statements and warranties thereof, which are hereby made a part of this contract, and in further consideration of the sum of twenty-one dollars and ———— cents, to be paid in advance, and of the payment of a like sum on the twelfth day of December in every year thereafter during the continuance of this policy.

Annual
Premium
$21.00.

Incontesta- "After this policy shall have been in force one bility. full year if it shall become a claim by death the company will not contest its payment, provided the conditions of the policy as to payment of premiums have been observed.

"The benefits and provisions placed by the company on the next page, are a part of this contract, as fully as if recited over the signatures hereto affixed."

"Benefits and provisions referred to in this policy.

Benefits at "If the insured is living on the 12th day of De- end of Ac- cember in the year nineteen hundred and thirteen, cumulation on which date the accumulation period of this pol- period. icy ends, and if the premiums have been paid in full to said date, the insured shall be entitled to one of the six benefits following:" [cash value; annuity; paid up policy, etc., etc.] If the insured made no selection dividends were to be apportioned as provided.

"(Any indebtedness to the company, including any balance of the current year's premium remaining unpaid, will be deducted in any settlement of this policy or of any benefits thereunder.)

Powers not "No agent has power in behalf of the company Delegated. to make or modify this or any contract of insur- ance, to extend the time for paying a premium, to waive any forfeiture, or to bind the company by making any promise or making or receiving any representation or information. These powers can be exercised only by the president, vice president, second vice president, actuary, or secretary of the company, and will not be delegated.

Payment of "All premiums are due and payable at the home Premiums. office of the company, unless otherwise agreed in writing, but may be paid to agents producing re- ceipts signed by the president, vice president, second vice president, actuary or secretary, and countersigned by such agent. If any premium is not thus paid on or before the day when due, then (except as hereinafter otherwise provided) this policy shall become void, and all payments previously made shall remain the property of the company.

Grace.

" After this policy shall have been in force three months, a grace of one month will be allowed in payment of subsequent premiums, subject to an interest charge of 5 % per annum for the number of days during which the premium remains due and unpaid. During the said month of grace, the unpaid premium with interest as above, remains an indebtedness due the company, and in the event of death during the said month, this indebtedness will be deducted from the amount of the insurance."

The applications were dated December 12, 1893, and contained, among other things, the following :

" Sum to be insured, $5000.

" Five policies of $1000 each.

" *Please date policy same as application.*" [It was averred in the complaint and found by the Circuit Court that these words in italics were inserted by the agent after the applications were signed and without applicant's knowledge.]

" Premium payable $\left\{\begin{array}{l}\text{Annually.} \\ \text{~~Semi-annually~~.} \\ \text{~~Quarterly~~.}\end{array}\right.$

Note : Strike out the rates not desired.

" On what table $\left\{\begin{array}{l}\text{Ordinary Life.} \\ \text{Life premium.} \\ \text{Endowment payable in} \ldots \ldots \ldots \text{years.} \\ \text{Limited endowment payable in} \ldots \ldots \text{years.}\end{array}\right.$

" I do hereby agree as follows : . . . 2. That inasmuch as only the officers at the home office of said company, in the City of New York, have authority to determine whether or not a policy shall issue on any application and as they act on the written statements and representations referred to, no statements, representations, promises or information made or given by or to the person soliciting or taking this application for a policy, or by or to any other person, shall be binding on said company, or in any manner affect its rights, unless such statements, representations, promises or information be reduced to writing and presented to the officers of said company, at the home office in this application. . . . 4. That any policy which may be

issued under this application shall not be in force, until the actual payment to and acceptance of the premium by said company, or an authorized agent, during my lifetime and good health."

*Mr. Henry J. Taylor* for McMaster. *Mr. F. E. Gill* and *Mr. E. A. Burgess* were on his brief.

*Mr. W. E. Odell* and *Mr. Frederick D. McKenney* for the Insurance Company. *Mr. George W. Hubbell* was on their brief.

Mr. Chief Justice Fuller delivered the opinion of the court.

By the payment of the annual premiums in advance and the delivery of the policies, McMaster's life became insured in the sum of five thousand dollars.

The contracts were not assurances for a single year, with the privilege of renewal from year to year on payment of stipulated premiums, but were entire contracts for life, subject to forfeiture by failure to perform the condition subsequent of payment as provided; or to conversion in 1913 at the election of the assured. *Thompson* v. *Insurance Company*, 104 U. S. 252; *New York Life Insurance Company* v. *Statham*, 93 U. S. 24.

The contention of the company presented by its answer was that McMaster requested that the policies "should be issued, dated and take effect the same date as the application, namely, the 12th day of December, 1893;" that the policies were accordingly so issued; and that McMaster's acceptance of them estopped his representative from denying that date, or claiming that the request that the policies should be so dated was not made by him.

But the policies were not dated December 12, and were dated December 18, the day on which they were actually issued. The applications were in terms parts of the policies, and by them it was agreed that the policies, though issued, should not be in

force until the actual payment and acceptance of the premiums. This was a provision intended to cover any time which might elapse between issue and delivery and payment. So that notwithstanding the premiums in this instance were not actually paid and received, and the policies delivered until December 26, it may be conceded that, and in accordance with the practice in such matters, the contracts of insurance commenced to run from December 18 rather than from December 26. They were certainly not in force on December 12, 1893. No controversy was raised as to fractions of a day, or the exclusion or inclusion of the first day, and it was conceded that payment on January 12, in one view, or on January 18, in the other, would have averted a forfeiture.

Assuming, however, that the alleged request was not made by McMaster; that it was not, at least literally, complied with; or that it was immaterial; the company insists that the policies expressly required payment of the annual premiums, subsequent to the first, (payable and paid on delivery,) on December 12 in each year, commencing with December 12, 1894; that McMaster in accepting them without objection became bound by this requirement, and could not plead ignorance thereof resulting from not reading them when tendered; and that, therefore, these policies were properly forfeited January 12, 1895, being twelve months from December 12, 1893, with a month of grace added.

The applications were part of the policies, and from them it appeared, and was found by the Circuit Court, that McMaster applied for insurance " on the ordinary life table, the premium to be payable annually." He was solicited to insure by the company's agent, and might, according to the company's form which was used, have asked that the premiums be payable annually, semi-annually or quarterly, but he chose that they should be payable annually, and that the rate of premium should be calculated on that basis by the ordinary life table. The company assented to this, and fixed the annual premium on each policy at $21, on the payment of which, that is, payment in advance, the policy was to go into effect. The payments were made, and the insurance was put in force for McMaster's life,

subject, it is true, to forfeiture for nonpayment of subsequent premiums, but forfeiture when? If within the first year, then the payment for that year did not secure the immunity from forfeiture during the year, which had been contracted and paid for.

But the company says that McMaster requested that the policies should go into effect on December 12, 1893, and that his representative is estopped from denying that that is the operation of the policies as framed and accepted, or that the second premiums matured December 12, 1894.

It was found from the evidence that after McMaster had signed the applications, and without his knowledge or assent, the agent of the company inserted therein : " Please date policy same as application ; " and it was further found that when the policies were returned to Sioux City, and were taken by the company's agent to McMaster, he " asked the agent if the policies were as represented, and if they would insure him for the period of thirteen months, to which the agent replied that they did so insure him, and thereupon McMaster paid the agent the full first annual premium or the sum of twenty-one dollars on each policy, and without reading the policies he received them and placed them away."

We think the evidence of this unauthorized insertion and of what passed between the agent and McMaster when the policies were delivered, taken together, was admissible on the question whether McMaster was bound by the provision that subsequent payments should be made on December 12, commencing with December 12, 1894, because requested by him, or because of negligence on his part in not reading the policies.

The applicable statutes of Iowa declared that " any person who shall hereafter solicit insurance or procure applications therefor, shall be held to be the soliciting agent of the insurance company or association issuing a policy on such application, or on a renewal thereof, anything in the application or policy to the contrary notwithstanding."

Each policy provided that after it had been in force for three months, " a grace of one month will be allowed in payment of subsequent premiums, subject to an interest charge of 5% per

annum for the number of days during which the premium remains due and unpaid. During the said month of grace the unpaid premium, with interest as above, remains an indebtedness due the company, and, in the event of death during said month, this indebtedness will be deducted from the amount of the insurance." This was a month in addition to the period covered by premiums already paid.

McMaster was justified in assuming, and on the findings must be held to have assumed, that if he paid the first annual premium in full he would be entitled to one year's protection, and to one month of grace in addition, that is, to thirteen months' immunity from forfeiture. And the findings show that the company, by its agent, gave that meaning to the clause, and that McMaster was induced to apply for the insurance by reason of the protection he supposed would be thus obtained.

In *Continental Life Insurance Company* v. *Chamberlain*, 132 U. S. 304, it was decided that a person procuring an application for life insurance in Iowa became by force of the statute the agent of the company in so doing, and could not be converted into the agent of the assured by any provision in the application.

In that case the applicant was required to state whether he had any other insurance on his life. He was in fact a member of several coöperative associations, and therefore did have other insurance; but the soliciting agent of the company, to whom he stated the facts, believing that insurance of that kind was not insurance within the meaning of the question, wrote "No other" as the proper answer, at the same time assuring the applicant that it was such. And this court held that the company was bound by the interpretation put upon the question by its soliciting agent.

When, then, McMaster signed these applications he understood, and the company by its agent understood, that if the risks were accepted at the home office he would by paying one year's premium in full obtain contracts of insurance which could not be forfeited until after the expiration of thirteen months.

The company accepted the risks and issued the policies December 18, and they were delivered and the premiums paid December 26.

Bearing in mind that McMaster had made no request of the company in respect of antedating the policies and was ignorant of the interpolation of the agent, and ignorant in fact, and not informed or notified in any way, of the insertion of December 12 as the date for subsequent payments, he had the right to suppose that the policies accorded with the applications as they had left his hands, and that they secured to him on payment of the first annual premiums in advance immunity from forfeiture for thirteen months. And the agent assured him that this was so.

The situation being thus we are unable to concur in the view that McMaster's omission to read the policies, when delivered to him and payment of the premiums made, constituted such negligence as to estop plaintiff from denying that McMaster by accepting the policies agreed that the insurance might be forfeited within thirteen months from December 12, 1893. *Knights of Pythias* v. *Withers*, 177 U. S. 260, and cases cited; *Fitchner* v. *Fidelity Mut. Fire Assoc.*, 103 Iowa, 276; *Hartford &c. Ins. Co.* v. *Cartier*, 89 Mich. 41.

On the other hand, can the company deny that McMaster obtained insurance which was not forfeitable for nonpayment of premiums within thirteen months after the first payment?

If it can, by reason of its own act, without McMaster's knowledge, actual, or legally imputable, then the company's conduct would have worked a fraud on McMaster in disappointing, without fault on his part, the object for which his money was paid. The motive of the agent to get a bonus for himself rather than to deceive McMaster is not material, as the result of his action would be the same. To permit the company to deny the acts and statements on which the transaction rested would produce the same injury to McMaster, no matter what the agent's motives.

But what is the proper construction of these contracts in respect of the asserted forfeiture? The company, although retaining the premiums paid and not offering to return them, contends that if McMaster was not bound by an agreement that the subsequent premiums should be paid on December 12, then that the minds of the parties had not met because it had not

contracted except on the basis of payments so to be made, but the question still remains whether the right of recovery in this case is dependent on such payment on the 12th day of December, 1894, or within thirty days thereafter.

We are dealing purely with the question of forfeiture, and the rule is that if policies of insurance contain inconsistent provisions or are so framed as to be fairly open to construction, that view should be adopted, if possible, which will sustain rather than forfeit the contract. *Thompson* v. *Phœnix Insurance Company*, 136 U. S. 287; *National Bank* v. *Insurance Company*, 95 U. S. 673.

Each of these policies recited that it was made in consideration of the written application therefor, which was made part thereof, and of the payment in advance of an annual premium of twenty-one dollars, "and of the payment of a like sum on the twelfth day of December in every year thereafter during the continuance of this policy."

Does this latter provision require payment of an annual premium during the year already secured from forfeiture by payment made in advance?

May not the words "in every year thereafter" mean in every year after the year, the premiums for which have been paid? Or, in every year after the current year from the date of the policy?

At all events, if the payment in advance was a payment which put in force a contract good for life, determinable by nonpayment of subsequent premiums, and this first payment was payment of the premiums for a year, could the requirement of payment of a second annual premium within that year be given greater effect than the right to cancel the policies from January 18, 1895, if such payment were not tendered until after the lapse of thirteen months from December 12, 1893?

To hold the insurance forfeitable for nonpayment of another premium within the year for which payment had already been fully made would be to contradict the legal effect under the applications and policies of the first annual payment. Clearly, such a construction is uncalled for, if the words "the twelfth day of December in every year thereafter" could be assumed

to mean in every year after the year for which the premiums had been paid. But if not, taking all the provisions together, and granting that the words included December 12, 1894, never-theless it would not follow that forfeiture could be availed of to cut short the thirteen months' immunity from December 18, 1893, as the premiums had already been paid up to December 18, 1894. And the company could not be allowed, on this record, by making the second premiums payable within the period covered by the payment of the first premium, to defeat the right to the month of grace which had been proffered as the inducement to the applications, and had been relied on as secured by the payment. If death had occurred on December 18, 1894, or between the twelfth and eighteenth, it is quite clear that recovery could have been had, and as the contracts were for life, and were not determinable, (at least for twenty years,) at a fixed date, but only by forfeiture, it appears to us that the applicable rules of construction forbid the denial of the month of grace in whole or in part.

It is worthy of remark that it was specifically provided that after the policies had been in force one full year they should become incontestable on any other ground than nonpayment of premiums, and we suppose it will not be contended that if any other ground of contest had existed and death had occurred between December 12 and December 18, 1894, the company would have been cut off from making its defence, because the policies had been in force "one full year" from December 12.

And if not in force until December 18, the date of actual issue, how can it be said that liability to forfeiture accrued before the twelve months had elapsed?

The truth is the policies were not in force until December 18, and as the premiums were to be paid annually, and were so paid in advance on delivery, the second payments were not demandable on December 12, 1894, as a condition of the continuance of the policies from the twelfth to the eighteenth. And, as the policies could not be forfeited for nonpayment during that time, the month of grace could not be shortened by deducting the six days which belonged to McMaster of right.

In our opinion the payment of the first year's premiums made

the policies non-forfeitable for the period of thirteen months, and inasmuch as the death of McMaster took place within that period, the alleged forfeiture furnished no defence to the action.

> *The judgment of the Circuit Court of Appeals is reversed; the judgment of the Circuit Court is also reversed, and the cause is remanded to the latter court with a direction to enter judgment for plaintiff in accordance with the eighteenth finding, with interests and costs.*

MR. JUSTICE BREWER did not hear the argument and took no part in the decision.