## Northern Assurance Company of London *v.* Carpenter, Trustee.

[No. 7,029. Filed April 18, 1911. Rehearing denied December 14, 1911. Transfer denied February 14, 1913.]

1. APPEAL.— *Review. —Harmless Error.— Instructions.— Damages.* —In an action on a fire policy, which stipulated that the company would not be liable in the event of loss for an amount greater than three-fourths of the actual cash value of the property covered by the items of the policy at the time of the loss, error in an instruction which did not accurately state the rule for the measurement of damages, was harmless, where the damages assessed were in a sum less than the amount of the aggregate three-fourths of the value of the items, as shown by the evidence, together with interest on the sum that would be properly chargeable against defendant. p. 434.

2. INSURANCE.— *Fire Insurance.— Actions.— Presumptions.— Presumption Against Forfeiture.*—Every presumption is indulged in favor of the good faith of the parties to fire policy, and inconsistencies on its face will be resolved in favor of the actual contract, and against forfeiture. p. 436.

3. INSURANCE.—*Fire Insurance.—Provisions of Policy.—Waiver.*— Where the insuring clause of a fire policy stated that for the consideration named the company insures the owner of the property described against loss by fire for a definite term, and the policy contained defeasance clauses inconsistent therewith and providing that before the policy shall take effect the insured shall make an inventory, and requiring him to keep books of account, etc., the provisions of such clauses were waived and the risk attached at once, where the company delivered the policy and

accepted and retained the full premium, without calling the attention of the insured to such clauses or making any inquiry as to an inventory, or as to his method of doing business.   pp. 436, 439.

4.   INSURANCE.—*Fire Insurance.—Construction of Contract.*—A fire insurance policy will not be interpreted with the strictness which ordinarily obtains in written instruments, since the insured has no part in drawing the contract.   p. 437.

5.   INSURANCE.—*Fire Insurance.—Inconsistent Provisions.—Waiver.—Fraud.*—Where the insurer receives pay for a valid and binding policy, and the insurer believes that he has such a policy, the law will not impute to the insurer a fraudulent intent not to deliver that kind of a policy, but will hold that conditions therein inconsistent with the risk were either waived or overlooked, and that the insurer is estopped from setting up a breach thereof.   p. 440.

From Greene Circuit Court; *Charles E. Henderson,* Judge.

Action by Enos W. Carpenter, trustee of the estate of Sherman Hash, bankrupt, against the Northern Assurance Company of London.   From a judgment for plaintiff, the defendant appeals.   *Affirmed.*

*A. C. Ayres, A. Q. Jones, J. E. Hollett* and *Frank C. Ayres,* for appellant.

*W. L. Slinkard* and *H. W. Letsinger,* for appellee.

ADAMS, J.—This was an action by appellee, as the trustee of the estate of Sherman Hash, bankrupt, to recover on a fire insurance policy issued by appellant to said Hash, insuring a store building, fixtures and a stock of merchandise against loss by fire.

The policy separately insured the store building for $300, the fixtures for $50, and the stock of goods for $1,200, and provided that the company should not be liable, in the event of loss, for more than three-fourths of the value of the goods destroyed.

The insuring clause in said policy reads as follows:

"In consideration of the stipulation herein named and of Twenty Five and 58/100 Dollars premium, does

> insure Sherman Hash for the term of one year from the 12th day of December, 1905, at noon, to the 12th day of December, 1906, at noon, against all direct loss or damage by fire, except as hereinafter provided. To an amount not exceeding Fifteen Hundred Fifty Dollars; to the following described property, while located and contained as described herein, and not elsewhere.''

Then follows a description of the property insured and the location of the same, together with the separate amount of insurance on the building, fixtures and stock.

The policy further provides:

> ''It is expressly stipulated that the assured shall, before this policy shall take effect (provided no inventory has been taken within twelve months), make an inventory of the stock to be covered hereby, and shall keep books of account, correctly detailing purchases and sales of said stock, from and after the date of said inventory, both for cash and credit, and shall keep said inventory and books securely locked in an iron safe, or away from the building containing the property hereby insured, during the hours that such store is closed for business. Failure to observe these conditions, shall work a forfeiture of all claims under this policy.''

Appellant insists that instruction No. 11 given to the jury was erroneous. By this instruction the court told the jury that if the plaintiff was entitled to recover, it should allow him, as damages, three-fourths of the aggregate value of the insured property destroyed by fire, within the aggregate sum of the insurance on the building, stock and fixtures. It was stipulated in the policy that in the event of loss the company would not be liable for an amount greater than three-fourths of the actual cash value of the property covered by each item of the policy at the time of such loss. In view of this stipulation, the instruction does not give the jury a strictly accurate rule for the measurement of damages; still the error was harmless, for the reason that the damages assessed by the jury are in a sum less than the amount of the aggregate three-fourths of the value of the building, of the stock of goods, and of

the fixtures, as shown by the evidence, together with interest on the sum that would be properly chargeable against appellant.

The insufficiency of the evidence to sustain the verdict is also insisted on as ground for reversal. The evidence in the record shows, without dispute, that the insured was the owner of a country store, carrying a stock of general merchandise; that on December 12, 1905, appellant, by its agent J. O. Walker solicited said Sherman Hash for fire insurance on his property; that said agent called on Hash at his store, and, after making inquiry as to the company represented by said agent and the rates, Hash agreed to take insurance; that the agent thereupon looked over the building, stock and fixtures, and agreed to insure the same for the several amounts and for the term herein set out, in consideration of the payment of a premium of $25.58; that no written application was made by Hash, and no questions were asked with reference to any inventory or the methods employed by Hash in the conduct of his business, nor did said agent state to the insured that before said insurance would become effective it would be necessary for him to make out an inventory and keep books of account; that the agent while on the premises, wrote out and delivered the policy, and took the notes of the insured for the premium; that said notes were paid before the fire, and that the company received and still retains said premium. It further appears from the evidence that the policy was not read to said Hash, nor did he read it, although he was an experienced business man, and was able to read; that the stock of goods on which the policy was written had recently been opened for sale; that Hash had not made an inventory, and did not thereafter make an inventory, or keep books of account detailing purchases and sales of stock, and did not have an iron safe in his store; that said agent at the time of delivering said policy knew that there was no iron safe in the store of the insured. It is also shown by the evidence that from the

time the policy was written and delivered until February 13, 1906, when the property was destroyed by fire, said agent was at the store of the insured once or twice a week, and was in said store on the day before the night in which it was burned.

Every presumption will be indulged in favor of good faith in construing the contract on which this action is founded, and any inconsistencies appearing on the face of the policy will be resolved in favor of the actual contract of the parties, and against a forfeiture. *McMaster* v. *New York Life Ins. Co.* (1901), 183 U. S. 25, 22 Sup. Ct. 10, 46 L. Ed. 64; *Glens Falls Ins. Co.* v. *Michael* (1907), 167 Ind. 659, 666, 74 N. E. 964, 79 N. E. 905, 8 L. R. A. (N. S.) 708.

It will be noted that the insuring clause is inconsistent with the defeasance clause, and the defeasance clause is inconsistent in itself. The insuring clause states that for the consideration named, appellant insures Sherman Hash against loss or damage by fire for the term of one year from December 12, 1905, at noon, to December 12, 1906, at noon, in the total sum of $1,550. This clause is complete and easily understood. It needs no explanation or construction. But the defeasance clause in effect says that Sherman Hash is not insured until he shall make an inventory of his stock, and shall thereafter keep books of account, correctly detailing purchases and sales. Hash could not be protected and unprotected at the same time. He was either insured, as provided in the insuring clause, or he was not. That he believed he was insured is evident from the fact that he paid his money. That the insurance company shared this belief is evident from the fact that it accepted the premium for one year's insurance, and delivered the policy. That the risk attached, and was intended to attach at the time the policy was delivered, is evident, from the further condition in the defeasance clause that ''failure to observe these conditions shall work a for-

feiture of all claims under this policy.'' If making the inventory and keeping books as provided constituted a condition precedent to the attaching of the risk, then the risk never attached, and there was no insurance. If there was no insurance, there could be no forfeiture. There was nothing to forfeit.

Again, the defeasance clause is inconsistent in another particular. While providing that before the policy shall take effect an inventory shall be made, it also provides that the inventory shall be kept in an iron safe, or ''away from the building containing the property *hereby insured*'' during the hours such store is closed. If the insurer did not consider itself bound from the time of receiving the premium and delivering the policy, and the property ''hereby insured'' was not, in fact, insured, nor intended to be insured, then the transaction cannot be characterized as anything other than fraudulent. No such construction can be placed on the policy in suit as long as it is possible to construe the same as an honest and fair contract, by taking and considering all of its parts together.

The conclusion following such construction is that the risk attached at noon on December 12, 1905, the day on which the policy was written, delivered and the premium paid. It would be unconscionable to collect and retain the full consideration of the contract, and then permit the insurance company to say that no liability accrued, and no protection was given the insured until he should, at some future time, comply with the stipulation relating to the inventory. The insured had no part in drawing the contract, and such contract will not be interpreted with the strictness which generally obtains in written instruments.

It is said in the well-considered case of *Glens Falls Ins. Co.* v. *Michael, supra,* on page 677: ''Insurance policies are prepared in advance by insurance and legal experts, having in view primarily the safeguarding of the interests

of the insurer against every possible contingency. The insurer not only fully knows the contents of the writing, but also adequately comprehends its legal effect. The insured has no voice in fixing or framing the terms of his policy, but must accept it as prepared and tendered, usually without any knowledge of its contents, and often without ability to comprehend the legal significance of its provisions. The meeting of the minds ordinarily deemed essential to a valid contract, as to many of its terms and conditions, is wanting in fact, and a mere fiction of law.'' In the same case at page 702, on petition for rehearing, the court, quoting from 1 Wood, Fire Ins. (2d ed.) §176, says: ''When a policy is issued upon a verbal application, without any representations in reference thereto, all information relative to the risks, except such as is unusual and extraordinary, is waived, and the policy is valid.''

In the case of *Ohio Farmers Ins. Co.* v. *Vogel* (1906), 166 Ind. 239, 245, 76 N. E. 977, 3 L. R. A. (N. S.) 966, 117 Am. St. 382, the court said: ''There is nothing mysterious or peculiarly venerable about the ordinary insurance policy, with its long list of provisions and conditions of defeasance. All these, and singular, must be construed like similar provisions in other written instruments, upon sound and well-established principles—principles that support the integrity of the contract, and that forbid an insurer from taking the money of another for a policy which he knows at the time of delivery contains a provision which, under the facts, will enable him to avoid it, if a loss occurs. Such provisions in insurance policies have been before the courts a great many times, and, so far as we have observed, courts have everywhere in the absence of fraud, refused to enforce a condition of forfeiture in favor of an insurer who has knowledge of the condition broken when he delivered the policy. One reason is this: having accepted a premium to take the risk of indemnifying the insured against loss, it is incompatible for the insurer to attach to the policy a condition that will

from the beginning relieve him of that risk. Another reason is that, although so expressed in the instrument, a violation of such condition does not in fact make the policy void, but voidable only, at the election of the insurance company. * * * And when an election has been once exercised the company will be confined to its choice. * * * In short it had the right to elect between two inconsistent courses, and, having chosen one, it will be excluded from all rights and benefits of the other. In such case, in the absence of fraud, it will be conclusively presumed that the insurer, while he keeps the premium, waives the inconsistent provision.''

Appellant, through its agent, having knowledge of the provisions of the policy contract, was bound to make inquiry as to the inventory, and to explain to the insured the

3. terms of the policy, particularly if it was the purpose of the insurer to defer the attaching of the risk until the insured should comply with certain of its terms. Failing to make such inquiry, the company must be deemed to have waived the condition relating to the time when the insurance should be effective; and by retaining the premium the company must be deemed to have waived other inconsistent provisions set out in the policy. *Glens Falls Ins. Co.* v. *Michael, supra; Ohio Farmers Ins. Co.* v. *Vogel, supra; Farmers Ins. Assn.* v. *Reavis* (1904), 163 Ind. 321, 70 N. E. 518, 71 N. E. 905; *German Mut. Ins. Co.* v. *Niewedde* (1895), 11 Ind. App. 624, 39 N. E. 534; *Hanover Fire Ins. Co.* v. *Dole* (1898), 20 Ind. App. 333, 50 N. E. 772; *Modern Woodmen, etc.,* v. *Vincent* (1907), 40 Ind. App. 711, 80 N. E. 427, 82 N. E. 475; *Aetna Life Ins. Co.* v *Bockting* (1907), 39 Ind. App. 586, 79 N. E. 524.

In the case of *Short* v. *Home Ins. Co.* (1882), 90 N. Y. 16, 19, 43 Am. Rep. 138, it is held that failure on the part of the insured to make known the fact that a building is unoccupied is not a breach of a condition in the policy avoiding it, for failure to make known every fact material to the

risk; that the applicant has a right to assume that the insurer will make proper inquiries, and that in making inquiries as to material facts he considers all others as immaterial, or assumes to know or waive information in regard to them. The law will not impute to the insurer a fraudulent intent not to give a valid and binding policy, although receiving pay for such a policy, and the insured believing that he had such a policy. Such imputation can be avoided only on the theory that the condition was overlooked or was waived, and the insurer held himself estopped from setting it up. See, also, *Van Shoick* v. *Niagara Fire Ins. Co.* (1877), 68 N. Y. 434; *Woodruff* v. *Imperial Ins. Co.* (1880), 83 N. Y. 133, 140.

"When the insurer issues a policy to the assured without any written application, containing conditions inconsistent with the risk; * * * it is estopped from setting up a breach of such conditions in defense to an action upon the policy, and the insured may maintain an action for loss under the policy, without seeking its reformation, as the doctrine of estoppel and waiver comes in aid of the assured." 2 Wood, Fire Ins. 1163. See, also, *Mershon* v. *National Ins. Co.* (1871), 34 Iowa 87; *Viall* v. *Genesee Mut. Ins. Co.* (1854), 19 Barb. (N. Y.) 440.

In *Mershon* v. *National Ins. Co., supra,* the court said: "Receiving the premium on the policy, with full knowledge, and after the occurrence of the facts upon which defendant might declare it forfeited, would amount to a waiver of defendant's right to treat it as forfeited."

In *Viall* v. *Genesee Mut. Ins. Co., supra,* it is said: "After they had, with knowledge of the facts, received the assessment, and thus again declared themselves entitled to enforce performance of the contract, on the part of the plaintiff, they were not at liberty, when called upon by the plaintiff to perform on their part, to insist that the contract had become void immediately after it was made. They had long afterwards recognized its existence. They had shown them-

selves willing to receive the advantages which it tendered to them. They had taken its fruits, and must not now be relieved from its obligations."

In the case of *Caldwell* v. *Fire Assn., etc.* (1896), 177 Pa. St. 492, 502, 35 Atl. 612, the court said: "Where, at the time of issuing an insurance policy, the company knows that one of the conditions thereof is inconsistent with the facts, and the insured has been guilty of no fraud, the company is estopped from setting up the breach of said condition. The same rule prevails when the insurance company ought to have known the facts constituting the alleged breach."

While no Indiana case has been based on facts identical with the case at bar, our decisions have been so numerous, and the principles declared in construing policies of insurance have been laid on such broad and equitable lines, as to cover and include the facts before us.

We find no reversible error in the record. The judgment is affirmed.

Myers, C. J., Lairy, P. J., Hottell, Ibach and Felt, JJ. concur.

NOTE.—Reported in 94 N. E. 779. See, also, under (1) 38 Cyc. 1809; (2) 19 Cyc. 936; (3) 19 Cyc. 796; (4) 19 Cyc. 656. As to how generally fire insurance policies are to be construed, see 10 Am. St. 390.