## DARMOUR PRODUCTIONS CORPORATION v. INSURANCE CO. OF NORTH AMERICA.

### No. 3987.

District Court, S. D. California, Central Division.

March 12, 1931.

Isador Morris, of Los Angeles, Cal., for plaintiff.

Young, Lillick, Olson, Graham & Kelly, of Los Angeles, Cal., for defendant.

JAMES, District Judge.

Defendant has demurred to the second amended complaint of the plaintiff. The action is to recover upon a policy of insurance issued to cover film negatives which the plaintiff was engaged in making. The risk assumed was to cover generally all damage to or loss of negatives of the plaintiff to an amount not exceeding $525,000.00. The policy contained the following terms:

"(3) This policy is to be deemed continuous and to cover and attach on all negatives produced by the assured on which production is commenced (as defined in this policy) on and after May 27, 1929.

"(4) This insurance to attach and cover as to any one negative insured hereunder from the time the film is first exposed at the commencement of the picture and to cover continuously thereafter at all times in all places in the United States and Canada until the full quota of positive prints or films previously contracted for have been made from the negative hereby insured or until the interest of the assured has ceased, whichever may first occur, but in no event after the terminating date, of the insurance on such nega-

tive, as shown in the declaration of risk to be made hereunder.

"(5) It is warranted by the Assured that they shall prior to commencement of any risk hereunder give written notice to this Insurance Company stating name or temporary title of picture to be produced, estimated costs of production, estimated period of production, number of negatives to be made and location of studios, laboratories and vaults intended to be used."

██ Plaintiff alleges that it gave notices, agreeable to the conditions of the policy, of the making of two film negatives, known as Whitwer No. 2 and Whitwer No. 6. The first notice contained the following statement: "Estimated cost of production $13,500.00, from May 27, 1929, to July 27, 1929." The second notice stated: "Estimated cost of production $13,500.00, from August 16, 1929, to October 15, 1929." It is alleged that both negatives were destroyed by fire on the 24th day of October, 1929, with a loss to the plaintiff on the first of $7,000, and on the second of $11,583.92. It will be noted that the date of, the loss in the case of each negative is later than the maximum time fixed in the period estimated for the production of each film. It is argued in support of the demurrer that the liability of the insurer ceased at the expiration of the period estimated by the producer as being that during which the negative would be in process of making. The policy as issued was, as it states on its face, an open one, intended to be continuously operative until terminated by the happening of events stated. It must be read as a whole and an interpretation adopted which will give effect to the intent of the parties. Furthermore, the uniform and unvarying rule is that in construing policies of insurance, uncertainties or ambiguities contained therein will be resolved in favor of the insured, because the insurer has, by his act, caused the uncertainty to exist. Thompson v. Phoenix Ins. Co., 136 U. S. 287, 10 S. Ct. 1019, 34 L. Ed. 408; McMaster v. New York Life Insurance Co., 183 U. S. 25, 22 S. Ct. 10, 46 L. Ed. 64; Mutual Life Insurance Co. v. Hurni Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102. The policy condition only required of the insured that in giving notice that it was about to make a film it should state the "estimated period of production"; hence, the date was not required to be definitely fixed, and in the nature of the business of film making, it can readily be seen why it would be impracticable to do that. The "terminating date," mentioned in paragraph (4)

of the policy above quoted, meant the estimated or approximate date and not the date when the insurance should absolutely cease.

The demurrer, therefore, should be overruled, and it is so ordered.