BEN TIMMER, Appellant, v. NEW YORK LIFE INSURANCE COMPANY, Appellee.

No. 43629.

DECEMBER 15, 1936.

REHEARING DENIED JUNE 18, 1937.

Hogan & Less and Raymond N. Klass, for appellant.

Carr, Cox, Evans & Riley, Ehlers English, and Kenline, Roedell & Hoffman, for appellee.

MITCHELL, J.—On December 7, 1933, Maggie Timmer gave to an agent of the New York Life Insurance Company her application for a policy in the amount of $1,000, designating as her beneficiary in case of death her husband, Ben Timmer. She had her choice of having the policy dated the day of the application or the day the policy was written and she selected the day the application was signed. The policy was issued by the home office on December 13, 1933, and received in the Waterloo branch office on December 16th, which was on Saturday. There was no mail to the town of Cascade on Sunday and altho the policy was forwarded on the day it was received at the branch office it did not reach the agent at Cascade, where Mrs. Timmer lived, until Monday, December the 18th. The premium was paid either on that day or had been paid a day or two before. The policy was dated December 7, 1933.

The next transaction between the insured and the insurance company about the policy was when the second notice was received by the insured of the premium due on December 7, 1934, at which time the agent who had sold the policy went to Mrs. Timmer's home and told her that unless she paid the premium before the 8th of January the policy would lapse. She informed him she was not able to pay the premium. Later the agent met one of Mrs. Timmer's daughters and suggested that if they could not carry the full amount, perhaps they could carry half of the amount. The premium was not paid. On the night of January 17, 1935, the agent was asked to come to the home of Mrs. Timmer to secure the premium. The agent informed the family that Mrs. Timmer had to be in the same state of health as when the application was made. Mrs. Timmer at that time was sick in bed, unconscious, and died the following day.

Ben Timmer, the husband and beneficiary, commenced this action in equity to reform the contract by substituting instead

of December 7th as the terminal end of the first annual period of insurance, the date of December 19th, alleging in his petition that, contrary to mutual agreement of the parties and by mutual mistake, and to secure for defendant an unconscionable and inequitable advantage, the defendant inserted as the due date for the renewal premium, the date of December 7th instead of the anniversary date that said insurance became effective, namely December 19th. The insurance company filed answer. The case was submitted to the lower court, which denied the relief sought, and plaintiff being dissatisfied, has appealed to this court.

The application·in this case was a written one. It was taken by the agent of the insurance company on the 7th day of December and plainly showed that the payment of the first premium maintained the policy for the period terminating on the 7th day of December, 1934. There is some dispute in the evidence as to when the premium was paid. It is the contention of the company that it was paid on the 14th day of December, whereas the evidence of appellant would show that it was paid at some time around the 19th of December. The application provided that the policy was not to be in force until it had been delivered to the insured, and unless she was in good health at that time. The policy was not delivered to her until the 18th day of December. There is evidence in this case to show that at the time the agent took the application he informed Mrs. Timmer that she had the choice of having the policy dated as of the date of the application or as of the date it was issued, and advised her that it was to her best interests to have it dated the day the application was signed. There is the testimony of the husband and beneficiary that he was present and he heard no such conversation. However, there is no evidence of any fraud on the part of the agent of the company at the time the application was taken, and there is no showing that the insured did not understand the terms or effect of the instrument which she signed, and there is not even a suggestion that the insurance company had any knowledge of any erroneous conclusion on the part of the insured or was guilty of any fraud or inequitable conduct. No evidence was offered to show that Mrs. Timmer was mistaken or misled in any slightest respect whatsoever, much less any showing of mutual mistake.

This court has held time and again that it is necessary, before the court can change or re-write a written contract thru the exercise of the equitable remedy of reformation, that the plain-

tiff must prove it was the intention of both parties to make an agreement such as it is sought to have established.

The appellant's claim, when analyzed in the light of the record he offered, reduces itself to the contention that the contract in question is so inherently fraudulent and ambiguous as to raise a legal doubt as to its meaning, and thus entitles the appellant to the benefit of the rule of construction against the insurer, resolving that doubt in favor of the insured, thus enabling the appellant to recover.

Let us look at the contract entered into between these parties. The application which Mrs. Timmer signed provided that the policy was to be dated December 7th. It also provided that the insurance was not to be in force until the policy was issued and delivered. The policy was not delivered until the 19th day of December.

It is appellant's contention that due to the fact that the policy was not in force until it was delivered Mrs. Timmer did not receive what she was paying for—one year of insurance, plus the grace period provided for in the policy—and that this in itself was fraud; that a court of equity should reform the contract and insert the date upon which the policy was delivered to her as the date from which the premium commenced to run.

The theory the appellant advances in this case has been before the courts on a great many occasions. There is some conflict in the authorities but the better weight of authority is contrary to appellant's contention. In the case of McKenney v. Phoenix Mutual Life Insurance Company, 138 Wash. 315, 244 Pac. 560, the Washington court said:

"Part 1 of the application, signed by the insured, dated December 17, 1920, directs the assured to state what are features desired, such as automatic premium lien, dating of policy, interim premium, optional settlement, extra policies, etc., which was filled in in this portion as to the dating of the policy, 'Date policy Dec. 17th, 1920'. Another portion of the application specifies that the insurance applied for shall not take effect until the issuance of the policy and the payment of the first premium therefor. The policy was actually issued and delivered on January 5, 1921."

At page 562 we find:

"Appellant also contends that the insured was entitled to 6 months' and 31 days' insurance from the date the policy became effective, either by payment of the first premium or by medical examination and the issuance and delivery of the policy; and that the policy was not in fact issued and delivered until January 5, 1921; wherefore the policy was thereby extended as to the date of paying premiums for 6 months from January 5, 1921, which would make the premium paying date July 5th instead of June 17th, and with 31 days' grace from July 5th.

"A number of cases to that effect are cited, and some quoted from, by appellant. While it is true that policies may not take effect until delivered while the insured is alive and in good health, nevertheless the premium paying period may be fixed by the parties regardless of the time when the policy takes effect. We find that the great weight of authority is to that effect. In Wilkinson v. Commonwealth Life Ins. Co., 176 Ky. 833, 197 S. W. 557, 6 A. L. R. 769, the court held that the time for payment of the premiums on a life insurance policy must be reckoned from the date of the policy, but not from the time of delivery, although the policy provides that it shall not be in force until delivered.

"An extensive note is appended by the editors in 6 A. L. R., commencing on page 774; many of the cases being extensively quoted and analyzed. The general rule is stated by the editors to be that, when the policy is antedated at the request of the insured, the agreement is binding on both parties, and the premium paying period begins on the date so inserted. Page 786. To the same effect is Wolford v. National Life Ins. Co., 114 Kan. 411, 219 Pac. 263, 32 A. L. R. 1248.

"In the last-cited case there is a very extensive and thorough review and analysis of the authorities on this proposition. In 32 A. L. R., commencing at page 1253, there is an extensive case note supplementing that in 6 A. L. R. 780. Again, it is shown that the great weight of authority is to the effect herein stated."

In the case of Wolford v. National Life Insurance Company, 114 Kan. 411, 219 Pac. 263, at page 264, 32 A. L. R. 1248, the Kansas court said:

"It was competent for the parties to agree upon the date for the payment of premiums and the time when the insurance

would terminate. It was definitely stipulated in the contract that the date was November 14, 1918, with the added grace period. * * * The time for the payment of premiums and when insurance would terminate was definitely stated and coupled with it was a provision that a failure to pay any premium when due should operate as a forfeiture and terminate the obligations of the company. There is no ambiguity in the contract in respect to the time of payment, which opens the way for interpretation by the court, and permits it to say that one of several dates mentioned was the time for which insurance was to run, and measure the date of expiration. Decisions upon contracts of that character are cited wherein the provisions were liberally interpreted in favor of the insured, and among them are Halsey v. Insurance Co., 258 Mo. 659, 167. S. W. 951; Stramback v. Fidelity Mutual Life Ins. Co., 94 Minn. 281, 102 N. W. 731; Prudential Ins. Co. of America v. Stewart, 237 Fed. 70, 150 C. C. A. 272, 6 A. L. R. 766; McMaster v. New York Life Ins. Co., 183 U. S. 25, 22 Sup. Ct. 10, 46 L. Ed. 64. But these are mainly cases where there were ambiguous provisions in the contract and where the times of payment were not definitely prescribed. Here the times of payment were unequivocally fixed in the contract. The parties were entitled to make their own contracts, and the courts cannot interpret into the contracts conditions contrary to those which the parties have clearly expressed in writing. There is nothing in the contract suggesting that December 6, 1917, the time of the delivery of the first policy, was the premium payment time, or that the parties had another date in mind for payment than the one specifically stated in the contract. The time when payments became due was very important to both parties, as insurance companies can only survive by the prompt payment of premiums, and in order that they may give the insured proper notices of defaults, and equally important to the insured in order that he may avoid a default and prevent the cancellation of his policy. * * *"

In Cantey v. Philadelphia Life Ins. Co., 166 S. C. 181, 164 S. E. 609, the South Carolina court said at page 611:

"Appellant argues that the application upon which the policy was issued is a part of the contract of insurance and that the application provides that the policy is not to become effective until the same is issued, delivered and the premium paid; that

the policy was dated August 19, 1927, was issued and mailed that day from Philadelphia; that it is admitted that it could not reach Winston-Salem, N. C., and be delivered, in due course, of mail, under five days; that therefore the policy could not have been delivered and the premium paid before the 24th day of August; and that it follows that the next quarterly premium did not fall due till November 24, and the thirty days of grace would carry it until December 24, and, as the insured died December 20, the policy had not lapsed. The policy in express terms provided for quarterly premiums to be paid August 19, November 19, February 19, and May 19 of each policy year during the life of the policy, with a grace period of thirty days for the payment of each premium. In other words, appellant contends that the quarterly premium did not fall due November 19, but five days later, since the policy was not delivered until five days after August 19. Reliance is had in support of this contention upon the case of Davis v. Ins. Co., 125 S. C. 381, 118 S. E. 536. That case emphasizes the wisdom of having fixed and definitely determined dates fixed in the policy of insurance upon which premiums are due and payable. There must be a certainty in such dates, else there would be a controversy in every such case as this growing out of the uncertainty of the date of delivery of the policy. It might not be possible to prove the date of delivery; the agent and insured being both dead. Then resort must be had to conjecture as in this case. It might be that the insured was unable to pay the premium when the policy was presented to him, and some delay ensued in the delivery of it. It might be that the insured was sick when the policy was brought to be delivered to him and it could not be delivered till he recovered; or it might be that he was absent from home and the delivery was delayed. Consider the confusion which would ensue under such conditions in proving when a premium falls due.''

And at page 612:

''These views are sustained in the case of Harvey v. Union Central Life Ins. Co., reported in 45 Fed. (2d) 78, 81, which appeal was heard in the United States Circuit Court of Appeals for the Fourth Circuit by Circuit Judge Parker and District Judges Watkins and Soper. Judge H. H. Watkins of the District Court of the Western District of South Carolina wrote the leading opinion. The action of the lower court was reversed, but that

was done on other grounds than those we are discussing. The opinion is authority for the views we here express. The opinion holds, among other things:

" 'There can be no doubt under the decisions that the requirement to pay premiums annually in advance on October 22 was a valid and binding agreement. The minds of the parties definitely met upon that point, and there is nothing in the record to indicate that the insured was in any way misled. Failure to pay any annual premium on that date resulted, after thirty days' grace, in lapse.'

" 'It is well settled that provisions of this kind are valid and enforceable, and that under them the failure to pay any installment is a sufficient defense to an action on the policy to recover a loss happening during the time when such premium was then due and unpaid.' 14 R. C. L., section 149, p. 977, and numerous cases there cited.

" 'If the parties enter into such a contract, it is binding upon them. The court cannot make a new contract for them or refuse to enforce the one they have made for themselves.' Mack v. Liverpool & L. & G. Ins. Co., 329 Ill. 158, 160 N. E. 222, 225, 57 A. L. R. 1043.''

In Weller v. Manufacturers Life Ins. Co., 256 Mich. 532, 240 N. W. 34, the Michigan court said at page 35:

"The policy was delivered and first premium paid December 16, 1929, and it is argued that this had the effect of changing the policy year and the premium due date to December 16th. The contract is otherwise. So is the law.

"In Jewett v. Northwestern Nat. Life Insurance Co., 149 Mich. 79, 112 N. W. 734, it was held, quoting syllabus: 'That a life insurance policy dated August 1st, and providing for payment of premiums on the 1st day of certain months, was not issued until August 18th, does not postpone the time of payment of the subsequent premiums to the 18th of the several months.'

"In McCampbell v. New York Life Insurance Co. (C. C. A.), 288 Fed. 465, it was held, quoting syllabus: 'The date stated in a life policy as the anniversary and the date of payment of premium controls, and the policy will lapse, unless premiums are paid on that date, or within the grace period thereafter, notwithstanding a provision in the policy that it does not become of effect until payment of the first premium, in which

case it relates back to the date of application, and the fact that insured was not protected between the date of application and the date of payment of first premium is immaterial.' "'

In New York Life Insurance Company v. Silverstein, 53 Fed. (2d) 986, the Circuit Court of Appeals for this circuit, confronted with the same question, said at page 989:

"But there is a further reason why this instruction was erroneous. The court in effect told the jury that if they found the premium was not paid until July 11, 1927, the payment of the premium on that date would carry the policy forward for six months, and the payment of the premium for another six months would carry the policy through a further six months' period, and so on. However, the policy contains the following definite provision: 'This contract is made in consideration of the payment in advance of the sum of $94.35, the receipt of which is hereby acknowledged, constituting the first premium and maintaining this policy for the period terminating on the 28th day of September, 1927, and of a like sum on said date and every six calendar months thereafter during the life of the insured.'

"As has already been noted, the policy further provides on its face that: 'This policy takes effect as of the 28th day of March, 1927, which day is the anniversary of the policy.'

"There is no real inconsistency between these above-quoted provisions in the policy and the provision in the application to the effect that the policy should not take effect until its delivery and the payment of the first premium. The policy definitely provides that the premiums following the first shall be due on definite dates, or at the expiration of definite periods. These contract provisions must control. McCampbell v. New York Life Ins. Co. (C. C. A.), 288 Fed. 465; McConnell v. Provident Savings Life Assur. Society (C. C. A.), 92 Fed. 769; Sellars v. Continental Life Ins. Co. (C. C. A.), 30 Fed. (2d) 42."

In the case of McCampbell v. New York Life Ins. Co., 288 Fed. 465, the 5th Circuit Court of Appeals said at page 469:

"It is argued that this necessarily follows from the provision in the application that it is a condition precedent to the company's liability that the policy should be issued and the first premium paid during the lifetime and good health of the applicant, and that to require the first premium to cover a period

prior to the beginning of such liability would be to require an insured to pay for insurance which he did not obtain. A conclusive answer is that parties are entitled to make their own contracts. * * * The business of life insurance is conducted upon the theory that premiums will be promptly paid. Klein v. Insurance Co., 104 U. S. 88, 26 L. Ed. 662; Iowa Life Insurance Company v. Lewis, 187 U. S. 335, 23 S. Ct. 126, 47 L. Ed. 204. The time when a premium is due should be definite, and that cannot be if the date upon which the first premium was in fact paid should fix the dates upon which subsequent premiums should be paid. Therefore the date mentioned in the policy for the payment of premiums governs. The date when the first premium was paid, which is almost always uncertain, and in most instances impossible of ascertainment, is immaterial. McConnell v. Life Assurance Society, 92 Fed. 769, 34 C. C. A. 663; Johnson v. Life Insurance Co., 143 Fed. 950, 75 C. C. A. 22; Wilkie v. Insurance Co., 146 N. C. 513, 60 S. E. 427; Jewett v. Insurance Co., 149 Mich. 79, 112 N. W. 734; Tibbits v. Insurance Co., 159 Ind. 671, 65 N. E. 1033; Methvin v. Fidelity Mutual Life Association, 129 Cal. 251, 61 Pac. 1112; Forch v. Life Indemnity Co., 157 Ill. App. 244. The plaintiff relies upon McMaster v. Insurance Co., 183 U. S. 25, 22 S. Ct. 10, 46 L. Ed. 64. That case was based upon the unauthorized insertion by the insurance company's agent of the words 'please date policy the same as application,' and upon the representation that the insurance became effective upon delivery of the policy.''

Many other cases might be cited, but from the foregoing it would seem to be well settled that the contract stipulation specifying the anniversary date of the policy for the payment of premiums in accordance with the request and direction of the insured in application, is controlling, and this provision clearly and definitely governs the date when the premium is due and accordingly the date when the grace period of thirty-one days begins to run.

This court was confronted with a similar question, and expressed itself as being in favor of the views set out in the cases quoted, in Tigg v. Register Life Ins. Co., 152 Iowa 720, at page 722, 133 N. W. 322, 323, where it was said:

''The policy was issued in consideration of the present payment of the premium 'and of the annual premium * * * to be

paid * * * at or before 12 o'clock M., on the 7th day of August in every year during the life of the assured.' Even though this fixed the date of the second payment less than a year after the issuance of the policy, it definitely determined the dates at which all premiums were payable, and the thirty days' grace would not extend the time within which payment might be made beyond September 7, 1908. * * *

"The policy was dated September 23, 1907, and plainly enough the term insurance extended until a year therefrom. This does not purport to change the time when the premiums 'become due,' but did give the insured a full year's term insurance, and, even though the thirty days grace may have expired, allowed the insured to convert his term policy into a life policy by payment at any time before the termination of the term insurance. In other words, the premiums became due on August 7, 1908, as expressly stipulated, but continued payable, not only during the thirty-day period of grace, but in the first year, until the termination of the one-year term.

"That an insurance contract, when of doubtful meaning or expressed in ambiguous language, is to be construed the more strictly against the insurer is well settled; but the long-established canons of construction are not to be ignored in so doing. One of these is that, when possible, all the conditions of a contract are to be construed so as to give effect to each. This is accomplished by the construction stated, which seems reasonable, and, as it gives to the assured precisely what he paid for, is just. To hold otherwise, and as contended by appellant, would do violence to the language employed in the policy, and accord it a meaning not to be inferred therefrom.

"We are of the opinion that the term insurance had terminated before the insured's death, and that the contract was never converted into a life policy by payment of the second premium during the term, or within thirty days after it became due, and for this reason the court rightly dismissed the petition."

The insured had the opportunity of having the contract of insurance dated either at the time the application was signed or when the policy was issued. She chose the date of the signing of the application. She received what she requested. The undertaking on the part of the insurance company was a life contract, conditioned upon the payment by the insured of the premiums

on the specified dates. The default on the part of the insured in the payment of any premium after the first, within and during the grace period of thirty-one days, after having received notice that her policy would lapse and become null and void if the premium was not paid before January 8, 1935, terminated the liability of the insurance company, and hence beneficiary is not entitled to the relief sought.

There was submitted with the case appellee's motion to dismiss the appeal. Said motion is overruled.

Judgment and decree of the lower court must be, and it is hereby, affirmed.—Affirmed.

Chief Justice and all Justices concur.