## McCONNELL v. PROVIDENT SAVINGS LIFE ASSUR. SOC. OF NEW YORK.

(Circuit Court of Appeals, Sixth Circuit. March 7, 1899.)

### No. 656.

1. **REFORMATION OF INSTRUMENTS—CHANGING DATE OF INSURANCE POLICY.**

A policy of life insurance was dated as of the day when the application therefor was first made, and on which a part of the written application was filled out, and forwarded to the company. Another part of the application was filled out, signed, and dated on a subsequent day, and the policy did not take effect by delivery and the payment of the first premium until some time thereafter. By the terms of the policy, the times for the payment of subsequent premiums were fixed with reference to the date it bore. There was no evidence of any special agreement as to when the policy should be dated, and it was accepted and retained without objection by the insured, who also received notice of the date on which the second premium payment would be due. *Held,* that such facts did not establish either fraud or mistake which would authorize a court of equity, after the death of the insured, to reform the policy by changing its date to that on which the application was completed, or on which the policy was delivered.

2. **LIFE INSURANCE—FORFEITURE FOR NONPAYMENT OF PREMIUM—NEW YORK STATUTE.**

The requirements of the New York statute, providing that no insurance policy shall be declared forfeited or lapsed for nonpayment of a premium when due, unless a notice, as therein prescribed, shall have been duly addressed and mailed to the person whose life is insured, are fully com-

plied with by the proper addressing and mailing of such notice; and the fact that it is not received by the insured is immaterial.

3. SAME—WAIVER OF FORFEITURE OF POLICY.

Where a premium on a policy of life insurance was paid by a friend of the insured, to a local bank holding the receipt therefor for delivery, on the day after it was due, and the day on which the insured died, a delay of three months before tendering the payment back will not estop the company from insisting on the forfeiture of the policy by reason of the default, where it appears that such delay was no longer than necessary to give it a reasonable time to investigate after being informed of the circumstances under which the payment was received.

4. SAME—CONSTRUCTION OF POLICY—TERM OF INSURANCE.

A life policy insuring the holder during the term of one year in consideration of a stipulated annual premium, but which also provides that such premium may be paid in quarterly installments, and that the insurance shall terminate on a failure to promptly pay any such installment, is a contract which binds neither party beyond the quarter for which payment has been made, except at the option of the insured; nor is such construction changed by a further provision that, in case of the death of the insured within the year, the installments of the annual premium remaining at the time unpaid shall be deducted from the amount of the policy.

Appeal from the Circuit Court of the United States for the Northern Division of Eastern District of Tennessee.

For opinion on former appeal, see 69 Fed. 113.

This was a bill in equity to correct the date of an insurance policy issued by the defendant upon the life of R. A. McConnell in favor of Mary F. McConnell, his wife, as the beneficiary. The policy was dated April 27, 1893. The policy reads as follows:

"The Provident Savings Life Assurance Society of New York, in consideration of the 'stipulation and agreements' in the application therefor and upon the next page of this policy, all of which are a part of this contract, and in consideration also of the payment of seventy-six dollars and twenty-five cents, being the premium hereon for the first year, promises to pay to Mary F. McConnell, wife of Robert A. McConnell, or to her legal representatives or assigns, the sum of five thousand dollars (less any indebtedness on account of this policy) within sixty days after the acceptance, at the office of the society in the city of New York, of satisfactory proofs of the death of R. A. McConnell, of Knoxville, Tennessee (the insured under this policy), provided such death shall occur on or before the 27th day of April, A. D. 1894."

Following this, and under the head of "Stipulations and Agreements" on the second page, are contained the following clauses, in the order given:

"(1) This policy does not go into effect until the first premium has been actually paid during the lifetime and good health of the within-named insured.

"(2) Failure to pay any premium or semiannual or quarterly installment thereof, when due, thereupon will terminate this policy.

"(3) Any unpaid quarterly or semiannual installments of the current year's premium, or any other indebtedness to the society, will be deducted in any settlement of this policy; and,

"(4) The annual premium on this policy may be paid by quarterly installments, as hereinafter stated, on or before the 27th day of April, July, October, and January in each year."

R. A. McConnell paid one quarterly dividend of $20.65 on the 9th day of May, 1893, and received the policy. The next quarterly payment was due on the 27th of July, 1893. It was not made on that date. On the evening of that day McConnell suffered a severe injury in a railroad accident, from which he died on the following day, July 28th. It appears that McConnell visited the office of the local agent of the defendant company in Knoxville on the 27th day of April, and applied for insurance upon that day; that, in accordance with his application, he was then subjected to a medical examination. The questions in it were answered in the handwriting of the physician. These questions and answers were marked as the second part of the application papers,

and were forwarded immediately by direct mail to the medical director of the company at New York. That part of the application which included questions to be answered by the insured, McConnell took home with him, in order to be accurate as to certain facts in family history, which he was required to give. He did not return the paper until the 29th of April, and dated it as of that day. The application having been accepted by the insurance company, the policy was forwarded to the general agents of the company at Cincinnati, bearing the date of that part of the application which had been forwarded by the medical examiner, and not that of the first part of the application, containing the answers by the applicant himself. The policy did not reach Knoxville before May 9th, and was then delivered to the insured. He took the policy without complaint of the fact that it was dated upon the 27th of April, and the subsequent payments required under its terms were to be made on the 27th of July, the 27th of October, and the 27th of January. It is now contended, and this is the gravamen of the bill, that the policy should have been dated when it was actually issued by the company, and the times for subsequent payments should have been fixed with reference to that date, and not with reference to the date of the medical examination. It is argued that, because there was no insurance upon the life of McConnell until the 9th or 10th of May, when the policy was delivered to him, he was made to pay $20 for two months' insurance, instead of three months, in accordance with the contract, and that the dating back of the policy was merely nugatory and illusory, for it could have no effect by relation. The ground of the bill is that the policy was dated April 27th by mutual mistake, each intending to make the date later at least by two days, which was the date of McConnell's application.

Jerome Templeton, for appellant.
Frank Spurlock, for appellee.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge (after stating the facts as above). The action of the circuit court in dismissing the bill was right. The policy could not be reformed except on the ground either of fraud or a common mistake of the parties. There is not the slightest evidence of fraud on the part of the insurance company. The reason why the date of the policy was made April 27th is palpable from an examination of the medical examiner's report. That was taken to be the date of the application, as, indeed, it was. The fact that the part of the application signed by the applicant was dated upon the 29th of April is not material, because all the circumstances show that the application was in fact made when McConnell visited the local agent's office, and submitted himself to a medical examination. Such an examination involves expense to the company, and is, of course, never had before an application for insurance is made. Now, it is quite true that the applicant, upon examining his policy, and finding it dated the 27th of April, when he did not receive it until the 9th of May, might have objected to the date, and might have requested that the dates be changed. In such a case the company could either have declined the insurance, or acquiesced in the suggestion. But until the policy was delivered, and the money paid, the contract of insurance was not entered into by the parties. We can only gather the intention of the parties from the face of the contract itself and the surrounding circumstances. The slightest examination of the policy by the insured would have shown him that the quarterly payments fell due on quarters calculated from the 27th of April. If he did not

consent to this, he should then have objected.    He made no objection.
The evidence shows that he received notice that his premium was due
on the 27th of July.    Indeed, it shows that two notices were sent,
and that he certainly received one.    No objection was made on his
part to the date at that time.    Equity will reform written contracts
when it is made clearly to appear that a different contract from that
which was written was actually agreed to by the parties, and that by
a common mistake a writing was signed which did not embody the
agreement actually made, but a different one.    The contract in this
case was made up of the application and the policy.    Of the applica-
tion, part is dated the 27th of April and part the 29th of April.    The
policy is dated the 27th of April.    There is nothing on the face of the
application to show when the applicant desired the policy to be dated.
We only know that the insurance company did date the policy upon
the 27th of April, fixing the subsequent times of payment with refer-
ence to that; and we know the insured received the policy without
objection, and received notice to pay subsequent payments without ob-
jection.    There is, therefore, not the slightest evidence to show that
the dates of the policy for payment were in any respect different from
that which the parties intended them to be.    That being true, there
is no ground for a reformation of the contract.    This is in accord
with the conclusion reached by the circuit court of appeals for the
Eighth circuit in the case of Insurance Co. v. McMaster, 30 C. C. A.
532, 87 Fed. 63.

It is said that the failure on the part of the insured to pay his
premium on the 27th of July cannot work a forfeiture, because, under
the law of New York, by which this policy, in accordance with its
terms, is to be construed, no policy of insurance can be declared for-
feited or lapsed by reason of nonpayment, when due, of any premium
unless a written or printed notice, stating the amount of such pre-
mium due on such policy, the place where it should be paid, and the
person to, whom the same is payable, shall be duly addressed and
mailed to the person whose life is insured; and no such notice, it is
said, was sent in this case.    The New York statute provides that the
affidavit of an officer, or any one authorized to mail such notice, that
the same has been placed in the mail, shall be presumptive evidence
that such notice has been duly given.    The written and oral evidence
that the notice in this case, properly addressed to McConnell, was duly
sent, more than 35 days before the date upon which the premium was
required to be paid upon the policy, from New York, was complete.
It also appears that what was called a "courtesy notice" of the same
character was sent by the general agents from the Cincinnati office
some three weeks before the 27th of July.    It is said that the sending
of the New York notice is not satisfactorily shown, because the ste-
nographer of the insured testified that she never saw a notice from
New York City, but only one from Cincinnati, and because a thorough
search among the papers of the deceased does not show the presence
among them of the New York notice.    This is immaterial, except as a
circumstance having some tendency to show that it was never mailed;
and in this case the evidence of its having been mailed is quite satis-
factory.    The statute only requires that the notice shall be mailed to

the right address. Its failure to reach the insured is a risk which the statute evidently intends the insured shall run. The duty of the company is fully complied with, and the forfeiture imposed by the terms of the policy not affected, if the required notice is duly mailed.

Again, it is contended that the second installment of the premium was paid to the agent of the defendant on July 28th, and that the defendant ratified the same. It appears that on the day after the date when the premium fell due, a friend of McConnell, learning of his accident, went to the bank, which was the collecting agent for the insurance company, and tendered the amount due upon the installment, a signed receipt for which the bank held. The cashier of the bank then gave the receipt, dating it back one day, to the 27th of July, and received the money. There was a considerable delay in the forwarding of the money by the agent to the company at New York, so that it was not received in New York until the 19th of August, and its payment was not explained until the 27th of September, 1893, by the president of the bank which issued the receipt and took the money. The proofs of death were not received in New York until the 29th of September. On the 24th of October, 1893, the general secretary of the company took the money to Knoxville from New York, and paid it back to the national bank, whose cashier, together with the secretary of the defendant company, went to the friend of McConnell who had paid the money, and returned it to him. He had agreed to hold the receipt, and return it to the bank, should the delivery of the receipt be found not to be proper; but when the money was paid him it appeared that he had turned the receipt over to the administrator of the insured. We find nothing in this circumstance to justify the contention that the company is now estopped to rely on the forfeiture by a failure to repay immediately the money which was paid under the circumstances above detailed. To say the least of it, the antedating of the receipt was a very peculiar proceeding, and while the fact that the receipt was antedated was subsequently brought to the attention of the company, delay incident to a proper investigation would certainly not work an estoppel in favor of the beneficiary, who at that time had not herself paid the money.

Finally, it is contended that this policy is to be construed as a policy for a year, upon which a quarter of the premium has been paid, and three-quarters remains due as a credit to the company. The case cannot be distinguished in this regard from Insurance Co. v. Sheridan, 8 H. L. Cas. 745, where the policy was in all substantial respects similar to the one under consideration. It is an annual policy, but it is an annual policy on which the premium is payable by quarterly installments, leaving the insured at liberty to drop it at any quarter, and imposing no liability on the part of the company unless the quarterly payment is made at the end of the quarter. If, however, the insured die at the end of the first quarter of the current year, the insurance company receives only one-quarter of the annual premium, instead of the whole. It has insured the deceased for a year, subject to his voluntary default. He has died, and the policy is earned. He should pay the whole year's premium therefor, but has only paid one quarter's premium. To meet this injustice, the proviso is introduced

that, if the insured should happen to die before the whole of said quarterly payments shall become due, then the company shall be entitled to deduct premiums for all the subsequent quarters of that current year from the amount of the policy. That proviso is not meant to apply to the case of a defaulted payment, but only to a case where the payments are regularly made as they become due, and where all the installments have not become due on the death of the insured. In this case there was a failure to pay a quarterly installment on the day fixed. As a consequence, the policy became forfeited, and all liability thereon ceased. The decree of the circuit court is affirmed.