## PONDER v. LAMAR LIFE INS. CO.

(District Court, W. D. Louisiana, Shreveport Division. April 6, 1925.)

No. 1489.

**1. Insurance ⚖⇒146(1)—Rule of construction of contract stated.**

The polar star of construction of an insurance contract is the intention of the parties, and it is the duty of a court, if possible, to ascertain and apply that intention, regardless of whether the result is favorable to the one party or the other, and in doing so words should be given their usual and ordinary meaning, and all given effect, if possible.

**2. Insurance ⚖⇒137(3)—Policy construed, and first premium held payable in installments at option of insured.**

A life policy provided: "Premium, $1,044, payable on delivery of this policy and thereafter * * * annually * * * or as provided under the heading 'Premium Payments.'" Under that heading it was provided that the policy should not take effect until the first premium was paid and the policy delivered, and that "the insured has the right at the time any premium falls due to pay an annual premium or substitute therefor semiannual or quarterly installments, * * * and such installments will continue the insurance in force for the time paid for." There was another provision that "after this contract has been in force three months" insured should have 30 days' grace in payment of any premium, during which time the policy should continue in force. *Held* that, construing the contract as a whole, the provision permitting the payment of the annual premium in installments applied to the first premium, especially as it was so construed by the parties by the payment and acceptance of one-quarter of the first annual premium and delivery of the policy on such payment.

**3. Insurance ⚖⇒360(1)—Payment of installment of premium held to continue policy in force only during time paid for.**

Under policy, payment of the quarterly installment of premium on its delivery *held* to keep it in force for three months only, with the additional days of grace allowed for payment of the second installment.

At Law. Action by Mrs. Gertrude S. Ponder against the Lamar Life Insurance Company. Judgment for defendant.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, La., for plaintiff.

Eugene J. McGivney, of New Orleans, La. (Solomon S. Goldman, of New Orleans, La., and Wells, Stevens & Jones, of Jackson, Miss., on the brief), for defendant.

DAWKINS, District Judge. Plaintiff sued as the beneficiary of a life insurance policy issued upon the life of her deceased husband, dated September 14, 1923, alleging payment of the first year's premium. The defendant admitted issuing the policy, but denied payment of the first full year's premium, and averred that only a quarterly installment had been paid, and that the policy had lapsed for nonpayment of the second installment.

On the day of trial plaintiff submitted a plea of estoppel and motion for judgment upon the face of the pleadings, the latter under a Louisiana statute; her position being that, inasmuch as the defendant had admitted the issuance and delivery of the policy as written, which, according to her contention, showed the payment of the premium, it, the defendant, could not be heard to deny receipt of the money to defeat the policy contract. Thereupon defendant objected to the allowance of the motion and moved to strike the same from the record, upon the ground that, a plea of payment being a special defense under the Louisiana law, to allow the filing of such a pleading would amount to a change of the issues. The objection was overruled and the motion ordered filed, for the reason that in my opinion the objections were not well founded, first, because the rule invoked is inapplicable, since the plaintiff is not being sued upon any obligation to defeat which the plea of payment is made, but merely contends the defendant is estopped to deny the fact of payment for the reasons alleged; and, second, the claim that the premium was paid, if made, would not be inconsistent with the original petition, which is propounded upon the theory that, in so far as the completion and binding effect of the policy for the first year is concerned, it must be treated in law as having been paid.

The motion to take judgment upon the face of the pleadings, having been passed for further consideration after hearing upon the merits, is overruled, for the reason that the defenses set up, if sustained, would defeat a recovery, and I prefer to pass upon the issues raised in deciding the merits. The plea of estoppel was referred to the merits. Plaintiff followed up her pleadings with appropriate objections to the introduction of testimony to show the failure of payment of the first year's premium and the same was admitted subject to the objections.

After a careful consideration of the case I am of the opinion that it must be determined upon a fair and reasonable interpretation of the written terms of the policy. I do not think the defendant can be permitted to show any independent or subsequent agreement with respect to the payment of the premium—in fact, no such defense is made—but that, if the right existed to pay

the first premium in quarterly installments, so as to keep it in effect only during the portion of the year which such payments covered, that right must reasonably flow from the terms of the policy itself. I think it conclusively shown that only a quarterly premium of $276 was paid, and that the deceased was timely notified of the failure to pay the subsequent installments, as well as of the forfeiture of the policy therefor, long before his death. The face of the policy reads as follows:

"In consideration of the signed application for this policy, which is the basis and is hereby made a part of this contract, a copy of which application is attached hereto, and the payment of the premium herein stated, in the manner specified, hereby insures the life of the person designated as the insured, for the amount named herein, payable as specified, subject to the conditions, provisions, and privileges on the following pages hereof, which are hereby made a part of this contract.

"The insured, James Ponder, of Shreveport, state of Louisiana.

"Amount of insurance, twenty thousand dollars, payable immediately upon receipt of due proof of the death of the insured and legal surrender of this policy, during the continuance of this policy, at the home office of the company, in the city of Jackson, state of Mississippi.

"Payable to Gertrude Smith Ponder, the executors, administrators, or assigns of the insured.

"Premium, one thousand forty-four and no/100 dollars, payable on delivery of this policy, and thereafter       annually at the home office of the company, or as provided under the heading 'Premium Payments' on the second page hereof, in exchange for the company's receipt on or before the 14th day of September in every year during the continuance of this policy."

I also quote pertinent provisions on the subsequent pages as follows:

"Premium Payments.—This policy shall not take effect until the first premium is paid, and the policy actually delivered during the life and good health of the insured. Each premium after the first year's premium is due and payable in advance at the home office of the company in the city of Jackson, Mississippi, but will be accepted elsewhere when duly paid in exchange for the company's receipt signed by the president, a vice president, secretary, or assistant secretary, and countersigned by the agent designated therein. If any premium is not duly paid, the policy shall cease and determine, except as provided in the nonforfeiture provisions of the policy."

"Agent's Authority and Power.—No agent is allowed to make, alter, or waive any of the terms, conditions, provisions, or privileges of this contract, waive or postpone payment of premium, or accept or collect any premium, unless he presents a receipt signed by the president, a vice president, secretary, or assistant secretary of the company."

"The Contract.—This policy and indorsements herein (and application herefor) constitute the entire contract between the parties hereto."

"Change in Payment of Premiums.—The insured has the right at the time any premium falls due to pay an annual premium or substitute therefor semiannual or quarterly, installments, according to the company's schedule for the kind of policy held, and such installments will continue the insurance in force for the time paid for, in accordance with the privileges, conditions, and provisions of this policy, the balance of any year's premium unpaid being deducted in any settlement or claim thereunder.

"The annual premium is $1,044; semiannual, $543; quarterly, $276.60."

In the application, which is made part of the policy, there also appears the following:

"Amount of premium, ———.

"Total first premium, $1,044.00.

"Is first premium to be annual, semiannual or quarter-annual? A."

It will be noted from the above-quoted face of the policy that, while the clause relating to premium declares it to be $1,044, the amount of a yearly premium, it does not recite a receipt of that sum, and at best could only be said to constitute an implied acknowledgment of the payment by the delivery of the policy. The language is, "Premium, one thousand forty-four and no/100 dollars, payable on delivery of this policy, * * *" and of course, if it were contended that this sum had not been paid to the extent that the policy, though delivered, never took effect, I think the insurer would be permitted, upon proper allegation, to show that fact. However, taking the policy as it was issued, in connection with the application (the latter reciting that the total "first premium" is "one thousand and forty-four and no/100 dollars," and in response to the question, "Is the first premium to be annual, semiannual, or quarter-annual?" the insured having answered, "A," undoubtedly meaning "annual"), I think the intention of the insured at the beginning, as understood by the

company, was that the first premium should be paid in full on the delivery of the policy, and it should be considered as having been so consummated, unless the other clauses and provisions permitted the insured to pay this first premium quarterly. It is conceded by counsel for plaintiff that any subsequent premium after the first year could, under the terms of the policy itself, at the pleasure of the insured, and without any further agreement between the parties, have been paid, either annually, semiannually, or quarterly.

It is my view that all of the pertinent provisions upon the subject should be construed together, and, in order to consider them in this way, they are quoted below, leaving out other portions and irrelevant matter which appear between, as follows:

"In consideration of the signed application for this policy, which is the basis and is hereby made a part of this contract, * * * and the payment of the premium herein stated, in the manner specified, * * * " the company insures the life of Ponder. "Premium, one thousand forty-four and no/100 dollars, payable on delivery of this policy, and thereafter annually, * * * or as provided under the heading 'Premium Payments' on the second page hereof. * * *

"This policy shall not take effect until the first premium is paid. * * * Each premium after the first year's premium is due and payable in advance. * * * If any premium is not duly paid, the policy shall cease and determine, except as provided in nonforfeiture privileges of the policy. * * *

"*Change in Payment of Premiums.*—The insured has the right at any time any premium falls due to pay an annual premium or substitute therefor semiannual or quarter-annual installments, according to the company's schedule for the kind of policy held, and such installments will continue the insurance in force for the time paid for, in accordance with the privileges, conditions, and provisions of this policy, the balance of any year's premiums unpaid being deducted in any settlement or claim thereunder.

"The annual premium is $1,044; semiannual, $543; quarterly, $276.60.

"*Grace in Payment of Premiums.*—After this contract has been in force three months, an extension of one month (not less than thirty days) will be allowed in the payment of any premiums, and the company agrees to accept without further medical examination any premium, without interest charge, if tendered within one month of due date, during which time the policy will remain in full force, subject to the deductions of unpaid premiums or any installment thereof, should the policy become a claim during such period of grace."

The physical arrangement of the paragraph in the face of the policy labeled on the margin "Premium" indicates that the form was drawn so as to permit its use where the premium was to be paid either annually, semiannually, or quarter-annually. The first blank space is for the amount of the premium, thus: "Premium,                dollars, payable on the delivery of this policy and thereafter        annually, *   *   * or as provided under the heading 'Premium Payments,' *   *   * on or before the        day of        in every year during the continuance of this policy." (The last blank extends half way across the page.) So that the policy could readily have been filled in with either a quarterly premium provision for $276.60, or a semiannual premium of $543, and the months of September, December, March, and June filled in, or, if semiannually, by the addition of the words "September and June."

But, as I have heretofore said, the purpose being in the beginning to issue a policy with a yearly premium, the blanks were filled in accordingly. However, when the paragraph in question uses the disjunctive and parenthetical phrase, "or as provided under the heading 'Premium Payments,' " it is just as if there were inserted in its stead the words of that clause appearing on the second page, in which event it would read: "Premium, one thousand forty-four and no/100 dollars, payable on delivery of this policy and thereafter annually, *   *   * or the insured has the right at any time any premium falls due to pay an annual premium or substitute therefor semiannual or quarterly installments. *   *   *"

It will be noted that the inserted language does not use the term "semiannual" or "quarter-annual premiums," but "installments"; but in the clause captioned "Grace in Payment of Premiums" the term seems to be used indiscriminately as applying to annual or less than annual payments, for it is said: "After this contract has been in force three months an extension of one month, etc., will be allowed in the payment of any premium. *   *   *" Hence it must have been intended, by the use of the term "first premium," any sum that might become due after the policy is in force three months. And in this particular clause it is clearly contemplated that the method of paying the premium

might be such as to keep it in force at the beginning for not more than three months.

Therefore, while the language used in the first paragraph, under the heading "Conditions and Provisions," and labeled "Premium Payments," says, "This policy shall not take effect until the first premium is paid, * * *" when construed with the one just referred to, it must mean the first premium paid under the requirements of the policy, and not necessarily the first annual premium. It is true that the same paragraph contains a provision that "each premium after the first year's premium is due and payable in advance, * * *" and standing alone this might indicate an intention that the premium of the first year should be paid in full; but, as heretofore stated, it must be read in the light of the other stipulations, and all given effect, if this can be done. In the use of this phraseology the author was dealing with premiums after the first year, and seeking to require that they should be paid in advance, but was not attempting to lay down a rule for the first year, and hence the latter must be determined from the other clauses covering specifically the time of payment of premiums generally.

[1] Counsel for plaintiff, in a very forceful oral argument and in brief, has urged the principle, announced both in text-books and jurisprudence, that, inasmuch as the insurance company provides its own form of policy, the language used must be construed more strongly against it, and so as to avoid a forfeiture. Mutual Life Insurance Co. v. Hurin Packing Co., 263 U. S. 168, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; 14 R. C. L. p. 926; 32 C. J. 739.

This doctrine is a wholesome one, and if the stipulations are reasonably susceptible of a double meaning, one favorable to the company and the other to the insured, the latter, for the reason stated, should be adopted. But, as has often been said, the polar star of the contract is the intention of the parties, and it is the duty of the court, if possible, to ascertain and apply that intention, regardless of whether the result is favorable to the one side or the other. In doing this words should be given their usual and ordinary meaning, and all should be given effect, if possible.

[2] Now, proceeding to apply these rules, let us see what the fair and reasonable meaning of the language used in this instance is. Bearing in mind that, as heretofore stated, both parties contemplated the issuance of the policy for a first yearly premium, did its terms permit the deceased, upon delivery, in-stead of paying that amount in full, to substitute a quarterly installment, as was done? The policy provides the "premium, one thousand forty-four and no/100 dollars, payable on delivery of this policy, and thereafter

annually, * * * or as provided under the heading 'Premium Payments.' * * *" Does this mean that the first premium of $1,044 must be paid in full on delivery of the policy, and thereafter the same amount annually, or as provided under the heading for the payment of premiums; or does it reasonably intend that either the sum stated shall be paid on delivery, or that it may be paid as stipulated in the clause referred to? If the clause stood alone, or read, "and thereafter annually, semiannually, or quarter-annually," it might reasonably and fairly be said that the division of the premium or substitution of installments was to be permitted only for subsequent years; but when the words of the clause captioned "Premium Payments" are brought over and read into the one on the face of the policy with which we are dealing, it is made to say, as above pointed out: "Premium, one thousand forty-four and no/100 dollars payable on delivery of this policy, and thereafter annually, * * * or the insured has the right *at any time any premium* falls due to pay an annual premium or substitute therefor semiannual or quarter-annual installments," etc. (Italics by the writer.)

Are we justified in restricting these broad and all-inclusive words by the addition of others, so as to make them mean and say that the insured has the right "at any time any premium falls due *after the first year*," etc.? The word "premium" is derived from the Latin "primo," meaning before the contract (Bouvier's Law Dictionary), and the first "falls due" on the delivery of the policy, as well as any subsequent one. Then, again, we would have to ignore that clause allowing a grace of 30 days for the payment of the premium, where it says: "After this contract has been in force three months an extension of one month," etc., will be given. Does this not indicate that the first premium might be such as to give the policy at the beginning a life of only three months? And, finally, the parties themselves so construed it, the deceased paying the exact amount of a quarterly premium and receiving a receipt therefor on that basis, and the defendant accepting it as such. What better guide could be had than the construction which the contracting parties have themselves placed upon their agreement?

The first case cited and relied on by plain-

tiff is that of Britton v. Metropolitan Life Insurance Co., 165 N. C. 149, 80 S. E. 1072, Ann. Cas. 1915D, 363. In that case the only stipulations upon the subject of premiums, as quoted in the opinion, were that in the opening clause of the policy it was provided, "In consideration of the application * * * and of the payment of the semiannual payment of $21.86, and of the payment of a like amount upon each 1st day of November and May hereafter," etc., and on the back "Semiannual premium, $21.86." There were no provisions similar to the ones hereinabove quoted in the case at bar. In this state of the case, defendant attempted to prove that on the delivery of the policy the insured asked leave to pay the premium quarterly, and that such an arrangement was made by the defendant's agent before the policy was delivered, and that the insured paid only $11.14, and that the home office sent out a quarterly receipt, but it could not be found. The defense was that the policy had lapsed at the end of the first quarter, but at the end of the trial the court ruled that all such evidence should be excluded and directed a verdict for the beneficiary. It was held that, under the restrictive provisions of the contract, this could not be done, for in order to do so it was necessary to prove an independent contract upon the subject of payment of premiums, different from that stipulated in the policy, and that to permit such a course would violate the well-known principle of law that, in the absence of fraud or error, what was said or done at the time or before the signing of an agreement cannot be shown to alter or modify its terms, but that the contract is conclusively presumed to evidence the true intention of the parties. In the present case the defendant does not rely upon any such contention, but upon a claim that the policy itself provides and permits the payment of the first premium either in full, or semiannually, or quarterly, as the insured may choose.

The next case cited is that of McAllister v. New England Insurance Co., 101 Mass. 558, 3 Am. Rep. 404. There the policy was for $5,000 and the clause as to the payment of premiums was: "In consideration of the premium of $120.50 to said company paid, * * * and of a like sum to be paid to them by said assured on or before the 11th day of April in every year during the continuance of this policy," and "in case any premium due upon this policy shall not be paid at the day when payable, the policy shall thereupon become forfeited and void. * * * This policy does not take effect until the premium is paid." The first premium was paid, $30.12 cash and the balance in two notes, one dated April 16, 1866, payable in six months from date, and the other dated April 11, 1866, due five years from date. The first note contained no provision with reference to forfeiture, but the second, the one due after five years, provided: "Said policy being agreed to be subject to the forfeiture, and to become void, in case of nonpayment of principal and interest of this note, in compliance with the terms thereof." By a statute of Massachusetts and the terms of the policy, the cash payment effected temporary insurance until November 6, 1866. The first note was not paid by the assured, but was refused, with the statement that "he would have nothing more to do with the company and abandoned the whole thing." The company continued to hold the notes and the assured to hold the policy. He died March 7, 1867. It was found that the company had not assented to the proposition of the assured that "he would have nothing more to do with the company and abandoned the whole thing." It was also found that the policy did not provide that it should be forfeited for failure to pay the first note, and, since there was no provision for the payment of the premium in installments, it had to be treated as having taken effect for a whole year, and the company to have extended credit for the unpaid balance of the first year's premium. Emphasis was laid on the fact that the first note did not contain the forfeiture clause, as did the second, and as indicating that the failure to pay it should not be so construed.

The third case is that of Mutual Reserve Life Insurance Co. v. Heidel, 161 F. 535, 88 C. C. A. 477, by Judge Sanborn, sitting in the Circuit Court of Appeals for the Eighth Circuit. There the policy was issued in lieu of one formerly held by the assured and the stipulation with reference to the premium was: "In consideration of the application" and the surrender of the former policy, "and of the first premium of $145.45 to be actually paid in cash on or before the delivery hereof, * * * and upon condition of the payment of the same amount in advance on the 1st day of the month of June in every year during the continuance of this policy. * * * This contract shall not take effect until this policy is delivered to the insured in person and the first premium is paid in cash. * * * *" Defendant offered evidence to show that after the policy was issued the insured paid a bimonthly premium of $17.45 and $7.66 interest on July 1, 1901 (the pol-

icy having been delivered on June 10, 1901), and that during the remainder of the year no further bimonthly premium was paid. Objection was made by the plaintiff upon the ground that, the defendant having delivered the policy, it was estopped to deny the payment of the full amount of the year's premium. In passing upon that ruling Judge Samborn said that the delivery of the policy with the clause above included therein was an acknowledgment that the premium had been paid, and estopped the company from "denying that the contract of insurance was in existence and that it was effective from the time of the delivery of the policy until it was forfeited for some other reason than failure to pay the first annual premium when it became due" (citing authorities), but that it "did not estop the company from proving, by a written contract made before or at the time the policy was delivered, that an extension of time for the payment of a part or all of the first premium to subsequent dates was given, and an agreement made that, if the deferred payment were not then made, the policy should cease, and the failure to make such deferred payments at the times specified by such agreement would be fatal to the continuance of the policy [citing authorities]. Competent evidence that this annual premium was not paid by Heidel when the policy was delivered, and that a portion had never been paid, was therefore admissible, though it is insufficient evidence to sustain the defense." The case was remanded to permit the defendant to reintroduce such evidence, if it could, for the consideration of the jury, thereby overruling the objection to all evidence upon the subject. But in the present case there is no contention of an independent agreement, but that the insured merely exercised his right to an election under the terms of the policy itself.

Other cases cited by the plaintiff sustain the well-recognized principle that a written contract cannot be assailed, except for fraud, error, violence, etc., as well as that, where the payment of the premium on the delivery of the policy is reasonably implied, parol evidence, in the absence of mistake or fraud, is likewise inadmissible to prove that such was not done. Farnum v. Phœnix Insurance Co., 83 Cal. 246, 23 P. 869, 17 Am. St. Rep. 233.

[3] However, I am of the opinion, in view of the conclusion that I have reached, that the policy permitted the payments in installments of the first year's premium as well as any other, and that the present case is controlled by the principles laid down in New York Life Insurance Co. v. Morris (Miss.) 102 So. 71, and the authorities cited therein, the syllabus of which reads as follows:

"Where a life insurance policy provides for the payment of the premium in quarterly installments, which shall maintain the policy in force for three calendar months, and that the payment of such premium shall not maintain the policy in force beyond the date when the next payment becomes due, except as to benefits provided for after default in premium payments, the contract binds neither party beyond the quarter for which payment has been made, except at the option of the insured, and this is true, although the policy further provides that any unpaid premiums required to complete payment for the current insurance year in which death occurs shall be deducted from the amount payable thereunder."

In that case the policy provided specifically that the first premium should be $19.56, receipt of which was acknowledged, and which should continue the policy in force until the 8th day of April, 1923, the expiration of the first quarter, and otherwise clearly indicated that, while the company exacted premiums upon a full year yearly basis, so long as the policy was in force, and if the insured died during that time the balance should be deducted from the amount to be paid the beneficiary, nevertheless, under its terms, the provision allowing the premium to be paid in installments was for the benefit of the insured, and that a failure to pay them within the time stipulated would forfeit the policy, the same as a default for an entire year. It was further held that the provision permitting the company to collect for a full year, where payments were being made in installments, was not enforceable unless the insured died during the existence of the policy, and the beneficiary had the right to assert a claim for the insurance against the company, in which event it was entitled to collect for the full year, just as it might have done, had it insisted upon the payment of the full annual premium in advance. See, also, Thompson v. Fidelity Mutual Life Insurance Co., 116 Tenn. 557, 92 S. W. 1098, 6 L. R. A. (N. S.) 1039, 115 Am. St. Rep. 823; McConnell v. Assurance Society, 92 F. 769, 34 C. C. A. 663; Howard v. Continental Life Insurance Co., 48 Cal. 229; Joyce on Insurance, vol. 2, par. 1108.

My conclusion is that the insured had the right to pay the first premium either in full or in installments under the terms of the policy itself, and that the first quarter alone was paid, that proper notices of delinquency

and of forfeiture were given, and that the policy had lapsed at the death of the insured.

Plaintiff's demands are therefore rejected, at her cost.